René P. Tatro (SBN 078383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
1800 N. Vine Street, Suite 234
Los Angeles, CA 90028
Telephone: (213) 225-7171
Facsimile: (213) 225-7151
E-mail: rtatro@ttsmlaw.com
jmarkowitz@ttsmlaw.com

Attorneys for Defendant
CVS Pharmacy, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HELEN WITTMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CVS PHARMACY, INC.;

Defendant.

Case No. 5:26-cv-02827-SSS (DTBx)

**CVS PHARMACY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Honorable Sunshine S. Sykes

Date: October 16, 2026
Time: 2:00 p.m.
Dept: Riverside Ctrm. 2, 2nd Floor
(Via Zoom)

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

WITTMAN'S ALLEGATIONS ........ 3

A. The label on the Calcium that Wittman bought discloses the proper dosing ........ 3

B. The label on the Glucosamine product Wittman did not purchase also discloses the proper dosing ........ 6

LEGAL STANDARD ........ 9

ARGUMENT ........ 9

A. No reasonable consumer would share in Wittman's alleged interpretation of the Products' labels ........ 9

1. A reasonable consumer would not ignore dosage and serving size information on the label of a product to be orally ingested, and would not assume the nutrients and separate net quantity disclosure to be a representation regarding the Products' dosing ........ 11

2. Context provided by the rest of the Products' labels further confirms that the recommended dosage for the Calcium is two softgels and for the Glucosamine is three capsules ........ 13

B. Wittman has not plausibly alleged my predicate violations to support a claim under the UCL's unlawful prong ........ 15

C. Wittman lacks standing to bring claims related to the Glucosamine product ........ 17

D. Wittman's claims for breach of express and implied warranty fail because there is no unequivocal promise that the dosage is a single softgel or capsule ........ 18

E. Wittman's negligent and intentional misrepresentation claims fail because there is no unequivocal promise that the dosage is a single softgel or capsule ..... 19

F. Wittman's claim for unjust enrichment fails ..... 20

G. Wittman lacks standing to pursue injunctive relief ..... 21

CONCLUSION ..... 22

## TABLE OF AUTHORITIES

*Cases* Page

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ........ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 9, 16

*Biggs v. Bank of Am. Corp.*,
2017 WL 11648863 (C.D. Cal. July 28, 2017) ........ 19

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........ 15, 16

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ........ 9, 10

*Broomfield v. Craft Brew Alliance, Inc.*,
2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ........ 19

*Brown v. Brita Prods. Co.,*
172 F.4th 1113 (9th Cir. 2026) ........ 11

*Bryan v. Del Monte Foods, Inc.,*
2024 WL 4866952 (9th Cir. Nov. 22, 2024) ........ 13, 15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ........ 12

*Chapman v. Pier 1 Impos. Inc.*,
631 F.3d 939 (9th Cir. 2011) ........ 21

*Chong v. Nestlé Water North America, Inc.*,
2021 WL 4938128 (9th Cir. 2021) ........ 20

*Corbett v. PharmaCare U.S., Inc.*,
567 F. Supp. 3d 1172 (S.D. Cal. 2021) ........ 19

*Cordes v. Boulder Brands USA, Inc.*,
2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018) .................................. 21

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .................................. 21

*Day v. AT & T Corp.*,
63 Cal. App. 4th 325 (1998) .................................. 20

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .................................. 9

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) .................................. 10

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006) .................................. 21

*Gamez v. Summit Nats. Inc.*,
2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) .................................. 18

*In re Actimmune Mktg. Litig.*,
2009 WL 3740648 (N.D. Cal. Nov. 6, 2009),
aff'd 464 F. App'x 651 (9th Cir. 2011) .................................. 20

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .................................. 20

*Just Film, Inc. v. Merch. Servs., Inc.*,
2011 WL 3809908 (N.D. Cal. Aug. 29, 2011) .................................. 19

*Kenney v. Fruit of the Earth, Inc.,*
2024 U.S. App. LEXIS 27083 (9th Cir. Oct. 25, 2024) .................................. 21

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .................................. 10

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) .................................. 18

*McGinity v. The Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) .................................. 13-15

*McVay v. Kroger Co.*,
2026 WL 713006 (C.D. Cal. Feb. 3, 2026) ........................................................ 17, 21

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ................................................................................ 10-12

*Oh v. Fresh Bellies, Inc.*,
2024 WL 4500727 (C.D. Cal. Oct. 15, 2024) ........................................................... 17

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (2004) ............................................................................................ 20

*Rubenstein v. The Gap, Inc.*,
14 Cal. App. 5th 870 (2017) ..................................................................................... 15

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) ....................................................................... 10, 11, 17

*Small v. Fritz Companies, Inc.*,
30 Cal. 4th 167 (2003) ............................................................................................ 20

*Tailford v. Experian Info. Sols., Inc.*,
26 F.4th 1092 (9th Cir. 2022) .................................................................................... 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................................... 9

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ................................................................................... 10

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ............................................................................. 15-16

*Wong v. Iovate Health Scis. U.S.A. Inc.*,
2025 WL 821451 (E.D. Cal. Mar. 14, 2025) ........................................................... 16

*Federal Statutes and Regulations*

21 C.F.R. § 101.36 .......... 2

21 C.F.R. § 101.36(b)(1)(i) .......... 5

21 C.F.R. § 101.36(b)(1)(ii) .......... 5

21 C.F.R. §§ 101.36(b)(2)(i)(A) .......... 5

21 C.F.R. §§ 101.36(b)(3)(i) .......... 5, 8

21 C.F.R. § 101.7 .......... 4, 8

21 C.F.R. § 101.7(a) .......... 12

21 C.F.R. § 101.93(c) .......... 4, 8

21 U.S.C. § 343(e)(2) .......... 4, 8

21 U.S.C. § 343(q)(5)(F)(ii) .......... 5, 8

21 U.S.C. § 343(r)(6)(C) .......... 4, 8

*Federal Rules of Civil Procedure*

Federal Rule of Civil Procedure 12(b)(1) .......... 9

Federal Rule of Civil Procedure 12(b)(6) .......... 9

*State Statutes*

Cal. Bus & Prof. Code § 17200, *et seq.* (Unfair Competition Law) .......... 3

Cal. Bus & Prof. Code § 17500, *et seq.* (False Advertising Law) .......... 3

Cal. Com. Code § 2313(a) .......... 16

Cal. Com. Code § 2314(2)(f) .......... 16

Cal. Civ. Code § 1572(2) .......... 19

Cal. Civil Code § 1709 .......... 16

Cal. Civil Code § 1710 .......... 16

Cal. Civil Code § 1710(2) .......... 20

Cal. Civil Code § 1711 .......... 15-16

Cal. Civil Code § 1750 *et seq.* (Consumer Legal Remedies Act) .......... 3

Cal. Health & Safety Code § 110100(a) .......... 12

Cal. Health & Safety Code § 110390 .......... 15-16

# INTRODUCTION

Plaintiff Helen Wittman ("Wittman") fails to state a claim against Defendant CVS Pharmacy, Inc. ("CVS") for the reasons set forth below. Before reaching this motion, however, this Court is respectfully requested to compel arbitration of Wittman's claims for the reasons set forth in CVS's concurrently filed motion to compel arbitration.

It is common sense that a reasonable consumer does not guess at the proper dosing of over-the-counter vitamin supplements. No one walks into a store, picks a supplement off the shelf, and blindly ingests it in whatever amount. To the contrary, a reasonable consumer does what any prudent person would do—they read the recommended dosage on the package to ensure safe use. This is not extraordinary diligence; it is the most basic exercise of ordinary care. And every dietary supplement sold in the United States bears explicit serving sizes and directions for use on its packaging, as mandated by federal statute and the Food and Drug Administration's ("FDA") regulations. The information is there, plainly stated, precisely because consumers are expected to read and follow it.

The dietary supplements at issue here, CVS's Calcium 1200 mg + D3 (a mineral + vitamin supplement) ("Calcium" or "Product") and CVS's Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg (a complex carbohydrate supplement) ("Glucosamine") (collectively, the "Products") comply with the FDA's regulations and expressly state their recommended dosage, as well as directions for use. The Calcium's stated recommended dosage is "2 Softgels" and the Glucosamine's stated recommended dosage is "3 Capsules." These dosages appear twice on each label, in the Supplement Facts and in the Directions for use—both of which begin on the front of the Product labels and wrap around to the side. Wittman does not dispute this. Rather, she alleges that she read two other individual statements—"Calcium 1200 mg" and "120 Softgels"—on the Calcium label and interpreted them to mean that the proper dosage was a single softgel. Although she never purchased the Glucosamine, Wittman similarly alleges that reasonable consumers read the statement "Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg," and the separate statement "120 Capsules," on the Glucosamine label and interpreted them to mean the

proper dosage is a single capsule.

Wittman's alleged interpretation is unreasonable, especially when considered in the context of supplement products. The statements "Calcium 1200 mg" and "120 Softgels" do not appear in close proximity. Instead, the package states that the Calcium Product provides "Calcium 1200 mg" and "Supports Bone Health." It also includes a separate statement of the net quantity (120 Softgels), as required by law, in the bottom left corner. These are entirely truthful and distinct statements, and no reasonable consumer would construe them as dosing instructions.

The same is true for the CVS Glucosamine product that Wittman did not buy. The statement "Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg" and the statement "120 Capsules" do not appear in close proximity. Instead, the package states the product "SUPPORTS JOINT FLEXIBILITY & MOBILITY" and further states "Promotes healthy joint structure and function." The label includes a separate statement of the net quantity (120 Capsules) as required by law, at the bottom of the label.[1]

Wittman's alleged reading is further contradicted by the Products' full labels, both of which state in two separate places—including the universal, FDA-mandated Supplement Facts (21 C.F.R. § 101.36) and each Product's "DIRECTIONS"—that the dosage is two softgels for the Calcium and three capsules for the Glucosamine. In addition, both the Supplement Facts and the DIRECTIONS appear, in part, on the front of the label (on the right side) and wrap around to the side. In light of the information listed in both the Supplement Facts and the Directions on the label, no consumer acting reasonably could be misled by the Products' packaging in the way Wittman alleges. Wittman's strained reading—which is inconsistent with the express dosing instructions on the label—is

[1] As discussed at pp.6-7 and footnote 3, below, Wittman includes in the Complaint photographs of the front and side of a Glucosamine bottle with a label that is not identical to the current Glucosamine label. Although Wittman did not buy either version, some putative members of the requested classes presumably purchased the current version while others presumably purchased the version depicted in the Complaint (and some may have purchased both). The differences between the versions are addressed in footnote 3, below.

insufficient to state a claim. CVS thus respectfully requests that the Complaint, including the claims under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), be dismissed with prejudice on these grounds alone.

Wittman's Complaint also suffers from six additional defects. First, Wittman purports to bring claims under the UCL's unlawful prong premised on various other California statutes, but she fails to even identify the elements of these purported predicate violations, let alone satisfy them. Second, Wittman attempts to bring claims about the Glucosamine product she did not purchase, alleging it is "similar" to the Calcium, but Wittman lacks Article III standing to pursue any claims relating to this unpurchased product because she does not have any cognizable injury traceable to the Glucosamine. Third, Wittman's claims for breach of express and implied warranty fail because there are no unequivocal statements or promises on the Product's labels that the dosage is one softgel or one capsule. Fourth, Wittman's common law fraud claims (for negligent and intentional misrepresentation) also fail for the same reason. Fifth, Wittman's claim for unjust enrichment fails because Wittman cannot state a claim for violation of the consumer protection statutes and does not point to any reason why it would be "unjust" for CVS to retain proceeds from the sale of the Products. Sixth, Wittman seeks the remedy of injunctive relief, but she lacks Article III standing to do so because it is not plausible that she will experience any future harm as she clearly and absolutely knows to read the package to understand the dosing instructions.

For these reasons, and as further set forth below, CVS respectfully requests that the Court dismiss the Complaint with prejudice.

## WITTMAN'S ALLEGATIONS

### A. The label on the Calcium that Wittman bought discloses the proper dosing.

Wittman alleges that she purchased CVS's Calcium supplement at a CVS store in or around March 2026. (Dkt 1, Complaint ¶ 27). She includes in the Complaint an image

of the front label of the bottle (depicted below at left) which shows, on its right side, the start of the FDA-mandated **Supplement Facts** panel and **DIRECTIONS** for use. (*Id.*, p.4). She also includes an image of the label when turned slightly so part of the front-most panel appears on the left and the **DIRECTIONS** for use and **Supplement Facts** can be read in their entirety (depicted below at right). (*Id.*).







As shown in the left image above (and at p.4 of the Complaint), underneath the name of the supplement, Calcium 1200 mg + D3, the label includes the statement "Supports Bone Health*"; the asterisk at the end refers to the FDA required disclaimer at the bottom of the bottle. 21 U.S.C. § 343(r)(6)(C); 21 C.F.R. § 101.93(c). Below the statement about bone health, in the bottom left corner of the front facing part of the label (and not connected or tied to the name of the product near the top of the label), the bottle discloses the net quantity of contents, "120 Softgels," as also required by federal statute and regulations. 21 U.S.C. § 343(e)(2); 21 C.F.R. § 101.7.

The complete **DIRECTIONS** for use shown in the right image above states: "Take two (2) softgels daily, with food or as directed by your physician. Take with a full

glass of water. Not formulated for use with children." (Complaint, p.4). This 2-softgel dosage is again listed a second time in the **Supplement Facts**, which explains that the "Serving Size" is "2 Softgels" and that there are "60 servings" in the bottle ("Servings Per Container") (*id.*), both consistent with federal regulations. 21 C.F.R. § 101.36(b)(1)(i) & (ii). As also required by federal law, the **Supplement Facts** lists the amount of nutrients obtained from two softgels (the "Amount per Serving") as follows: "1,200 mg" of calcium and "25 mcg (1,000 IU)" of vitamin D3. 21 U.S.C. § 343(q)(5)(F)(ii); 21 C.F.R. §§ 101.36(b)(2)(i)(A), 101.36(b)(3)(i).

Wittman does not allege that the Product failed to provide her with calcium that supports bone health. She does not allege that the Product did not contain 120 softgels as stated. Nor does she allege that any of the information in the Supplement Facts is incorrect. It is not. Instead, Wittman alleges that she understood the net quantity disclosure in the lower left corner of the front of the Product label to be a representation and warranty that "each softgel" within the bottle contained 1,200 mg of calcium, and further alleges that the Product did not meet this expectation, causing her to overpay for it. (Complaint ¶ 16).

Wittman admits that she decided to purchase the CVS store brand of Calcium (presumably as opposed to a different brand) in reliance only on the front-most part of the label, apparently without bothering to turn the bottle slightly to read the full Supplement Facts panel or Directions—which vitamin and supplement users understand provide necessary information about dosing and usage. (Complaint ¶ 28). Wittman claims her doing so harmed her monetarily because she paid more money per each 1,200 mg of calcium than she believed she was paying, or than she purportedly would have paid had she bought a different (but undisclosed) brand. (*Id.* ¶ 29).

In other words, Wittman purportedly calculated what she believed to be the price per 1,200 mg of calcium by dividing the price of the Product by what she purportedly believed to be the number of servings per container and, to do this math equation, purportedly assumed the dosage was a single softgel—even though a single softgel dosage is stated nowhere on the Product label. Put otherwise, Wittman purportedly ignored two

clear and accurate statements about dosage and serving size about a product she was buying for a specific benefit that she was going to orally ingest, preferring instead to purportedly "rely" on her putative interpretation of other information on the label. Rather than look at the dosage actually stated on the label in both the **Supplement Facts** panel and **DIRECTIONS**—or rather than look at the Servings Per Container actually listed in the **Supplement Facts**—and divide the price by the stated 60 Servings Per Container, Wittman instead purportedly divided the total price by 120. This math error caused her purported monetary harm.

Wittman seeks to represent classes of consumers both nationwide and in California who purchased the Calcium, claiming reasonable consumers ignore the information she ignored about the dosage and serving size of a product they intend to ingest orally, and instead make the same purported assumptions as she did, *i.e.*, they also interpret the two individual statements—"Calcium 1200 mg" and "120 Softgels"—on the Calcium bottle's front panel to mean that the proper dosage is a single softgel and ignore the full Supplement Facts panel or Directions before making their purchases.

**B. The label on the Glucosamine product Wittman did not purchase also discloses the proper dosing.**

Although Wittman only alleges that she purchased the CVS Calcium supplement (a mineral + vitamin supplement), she purports to bring claims concerning CVS Glucosamine (a complex carbohydrate).

Wittman includes in the Complaint photographs of the front and side of a Glucosamine bottle which appear to have been taken inside a store. (*See* Complaint, p.4). The label on the bottle is not identical to the current Glucosamine label as it appears on CVS's website, depicted in Exhibit A to the Declaration of René P. Tatro ("Tatro Decl.") in support of CVS's Request for Judicial Notice ("RJN") filed herewith.[2] Although Wittman did not buy either version of the Glucosamine, some putative class members

---

[2] The Court is requested to take judicial notice of the images of the current Glucosamine label on CVS's website for the reasons set forth in the RJN.

presumably purchased the current version, while others presumably purchased the version pictured in the Complaint (and some may have purchased both). The images below depict the current Glucosamine label, and the discussions in this brief address the current label; the differences between the two labels are listed in footnote 3, below.[3]

The front label of the current bottle (depicted below at left)—like the Calcium—shows, on its right side, the start of the FDA-mandated **Supplement Facts** panel and **DIRECTIONS** for use. (Tatro Decl. Exh. A). The image on the right, below, shows the current label when turned slightly so part of the front-most panel appears on the left and the **DIRECTIONS** for use and **Supplement Facts** can be read in their entirety. (*Id.*).







[3] As referenced herein, the differences between the Glucosamine label depicted in the Complaint and the current label on the CVS website include the following: the current label states "Supports Joint Flexibility & Mobility" while the label depicted in the Complaint stated "Supports Joint Health"; the current label states "Promotes healthy joint structure & function" while the label depicted in the Complaint stated "Supports healthy joint structure & function"; the "DIRECTIONS" on the current label are above the Supplement Facts while on the label depicted in the Complaint they were to the right of the Supplement Facts; and the current label lists the Servings Per Container to the right of the Serving Size while on the label depicted in the Complaint the Servings Per Container was listed below the Serving Size. (*Compare* Tatro Decl. Exh. A *with* Complaint, p.4).

As shown in the left image above (Tatro Decl. Exh. A), underneath the name of the supplement, Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg, the label includes the statements "SUPPORTS JOINT FLEXIBILITY & MOBILITY †" and "Promotes healthy joint structure and function.†"; the † symbols refer to the FDA required disclaimer in a vertical box on the right. 21 U.S.C. § 343(r)(6)(C); 21 C.F.R. § 101.93(c). Below the statements about joint flexibility, mobility, structure, and function, in the bottom left corner of the front facing part of the label (and not connected or tied to the name of the product near the top of the label), the bottle discloses the net quantity of contents, "120 Capsules," as also required by federal statute and regulations. 21 U.S.C. § 343(e)(2); 21 C.F.R. § 101.7.

The complete **DIRECTIONS** for use shown the right image above states: "For adults, take three (3) capsules daily with food as a dietary supplement. For best results take one capsule three times daily." (Tatro Decl. Exh. A). This 3-capsule dosage is again listed a second time in the **Supplement Facts**, which explains that the "Serving Size" is "3 Capsules" and that there are "40 servings" in the bottle ("Servings Per Container") (*id*.), both consistent with federal regulations. 21 C.F.R. § 101.36(b)(1)(i) & (ii). As also required by federal law, the **Supplement Facts** lists the amount of nutrients obtained from three capsules (the "Amount per Serving") as follows: "1500 mg" of glucosamine hydrochloride and "1200" of chondroitin sulfate. 21 U.S.C. § 343(q)(5)(F)(ii); 21 C.F.R. §§ 101.36(b)(2)(i)(A), 101.36(b)(3)(i).

Wittman does not allege that glucosamine and chondroitin do not provide the advertised benefits. She does not allege that the Glucosamine product does not contain 120 capsules as stated. Nor does she allege that any of the information in the Supplement Facts is incorrect. It is not. Instead, Wittman alleges that reasonable consumers will understand the net quantity disclosure in the lower left corner of the front of the label to be a representation and warranty that "each capsule" within the bottle contains 1,500 mg of glucosamine and 1,200 mg of chondroitin, that reasonable consumers will ignore the Directions or Supplement Facts that begin on the right side of the front label, and that reasonable consumers will make the same putative assumptions and math error she

allegedly made when she purchased the Calcium product. (Complaint ¶¶ 16–17).

**LEGAL STANDARD**

To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court "should assume the veracity of well pleaded factual allegations," allegations that "are no more than conclusions" are "not entitled to the assumption of truth." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citations omitted); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

Pursuant to Rule 12(b)(1), a party may challenge a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is well-established that Article III "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

**ARGUMENT**

**A. No reasonable consumer would share in Wittman's alleged interpretation of the Products' labels.**

Liberal pleading standards notwithstanding, at some point, consumers must be stopped from clogging the judicial system with frivolous claims premised on their personal decision to ignore federally required label information in favor of purported assumptions about substances they are purchasing to orally ingest. To wit: Wittman's first three claims, under the CLRA, FAL, and the unfair and fraudulent prongs of the UCL, are governed by the reasonable consumer test. *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025). Under this standard, a plaintiff must "show that 'members of the public are *likely* to be

deceived'" by the defendant's allegedly deceptive business practice. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (emphasis added, citation omitted); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) ("only those statements on a label that are 'likely to deceive' a 'reasonable consumer' are actionable").

The pleading standard requires that the plaintiff must plausibly allege "'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Bodenburg*, 146 F.4th at 769 (citation omitted). At the pleadings stage, "[t]his requires more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Thus, to survive dismissal, a challenged statement must be "unambiguously deceptive to an ordinary consumer." *Bodenburg*, 146 F.4th at 769; *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (same).

The reasonable consumer analysis requires that an allegedly deceptive statement be "read reasonably and in context." *Freeman*, 68 F.3d at 290. A "reasonable consumer" does not (like Wittman allegedly did) ignore label information about dosage and serving size for a product which is intended to be orally ingested. Accordingly, in evaluating claims, courts "'take into account all the information available to consumers and the context in which that information is provided and used.'" *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (citation omitted).

Here, as further set forth below, a reasonable consumer would not ignore the label information on serving size and directions for use about these products intended to be orally ingested, and would not, therefore, be misled by the challenged statements on the Products in the way that Wittman asserts.

/ / /

/ / /

/ / /

**1. A reasonable consumer would not ignore dosage and serving size information on the label of a product to be orally ingested, and would not assume the nutrients and separate net quantity disclosure to be a representation regarding the Products' dosing.**

When purchasing a product to be orally ingested, no "reasonable consumer" ignores the dosage or serving size information on a label. To do so would be folly, and axiomatically "unreasonable." But even if a consumer unreasonably did so, dismissal of false labeling claims on the pleadings is nonetheless proper "'where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising.'" *Moore*, 4 F.4th at 882–83 (9th Cir. 2021) (citation omitted); *see also Brown v. Brita Prods. Co.,* 172 F.4th 1113, 1119 (9th Cir. 2026) (affirming dismissal of CLRA, FAL, and UCL claims where no reasonable consumer would share in the plaintiff's belief that the defendant's filters could remove "*all* contaminants … particularly in light of [the defendant's] extensive disclosures to the contrary"); *Shaeffer,* 44 Cal. App. 5th at 1139 (affirming demurrer where "a reasonable consumer is unlikely to make the series of inferential leaps" required by the plaintiff's reading of the label); *Ebner*, 838 F.3d at 965.

For example, in *Ebner*—which, notably, did not involve a situation like this one where the plaintiff affirmatively ignored information on the label—the Ninth Circuit affirmed the dismissal of CLRA, FAL, and UCL claims where the plaintiff alleged she was misled by the net weight disclosure on the packaging of lip balm products because the dispenser could not dispense all of the product. 838 F.3d at 965. Applying the reasonable consumer standard, the Court found there was no deception where it was "undisputed that the [product's] label discloses the correct weight of included lip product." *Id.* at 965 "Apart from the accurate weight label, there are no other words, pictures, or diagrams adorning the packaging, as there were in *Williams*, from which *any* inference could be drawn or on which *any* reasonable belief could be based about how much of the total lip product can be accessed by using the screw mechanism." *Id.* at 966 (emphasis original). The Court explained that "even if 'some consumers might hazard such an assumption,' the [product's] tube is not false and deceptive merely because the remaining product quantity may be

'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons …' that may purchase the product." *Id.* (citation omitted).

Here, Wittman similarly fails to plausibly allege that a reasonable consumer, acting reasonably under the circumstances, would ignore information on the label about the dosage and serving size of a product intended to be orally ingested, and instead share in her putative reading of the labels, *i.e.*, ignoring the Supplement Facts and Directions that begin on the right side of the front of the Products' labels. Wittman does not (and cannot) allege that the Calcium's packaging contains any express representation that a single softgel provides 1,200 mg of calcium nor that the Glucosamine's packaging contains any express representation that a single capsule provides 1,500 mg of glucosamine and 1,200 mg of chondroitin. Wittman could not truthfully make such allegations.

Consistent with federal and California law, CVS includes accurate disclosures of the net quantity of tablets on each Product's front panel.[4] *See* 21 C.F.R. § 101.7(a); Cal. Health & Safety Code § 110100(a) (adopting federal regulations). This separate net quantity disclosures of "120 Softgels" and "120 Capsules" in the bottom right corner merely informs the consumer of the total number of tablets contained in each Product; it says nothing about the dosage of any individual tablet.

Wittman's alleged reading is even more unreasonable when considered in the context of shopping for a supplement intended to be orally ingested. As the Ninth Circuit has recognized, a reasonable consumer does not ignore generally known facts about the type of product she is considering purchasing. *See Moore* 4 F.4th at 882–83 (discussing "contextual inferences from the product itself" and what consumers "generally know"

[4] To the extent Wittman challenges the accuracy of this mandatory net quantity i, her claim is barred by California's safe harbor doctrine. *See Ebner*, 838 F.3d at 963 (explaining that "[i]n California, unfair competition claims are subject to the safe harbor doctrine, which precludes plaintiffs from bringing claims based on 'actions the Legislature permits'" and finding challenge to the accuracy of a net weight statement cannot form the basis of an unfair competition claim) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)).

about the product category in affirming dismissal).

Here, a reasonable consumer, in the context of shopping for a vitamin supplement, does not ignore dosage or serving size information about a product to be orally ingested. Instead, the reasonable consumer must be and is generally familiar with and understands that supplement products contain specific dosing instructions on the package for safe use. With this reality in mind, a reasonable consumer reviewing the front of the Calcium bottle would not simply ignore information on the label about serving size, but instead assume that the statements "Calcium 1200 mg" and "120 Softgels" on the Calcium label should be construed to mean that each individual tablet contains 1,200 mg of calcium. Likewise, a reasonable consumer reviewing the front of the Glucosamine bottle would not simply assume that the statements "Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg" and "120 Capsules" should be construed to mean that each individual tablet contains 1,500 mg of glucosamine and 1,200 mg of chondroitin. Wittman's attempt to cobble these words together to mean that the Products promises a serving size of one tablet is belied by a plain reading of the package and would require a series of inferential leaps that defy common sense. Accordingly, a reasonable consumer would not find these statements to be "unambiguously deceptive" as to the proper dosing for the Products.

**2. Context provided by the rest of the Products' labels further confirms that the recommended dosage for the Calcium is two softgels and for the Glucosamine is three capsules.**

Where a front package statement is not "unambiguously deceptive," the Ninth Circuit has explained that a reasonable consumer "would necessarily require more information" before making assumptions about the product. *See Whiteside*, 108 F.4th at 781; *McGinity v. The Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023) ("the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label"); *see also Bryan v. Del Monte Foods, Inc.,* 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024) (affirming dismissal where "the back label accurately and clearly discloses several synthetic ingredients about which Plaintiff complains").

For example, in *McGinity*, the Ninth Circuit affirmed dismissal where the plaintiff alleged that she was misled by the defendant's shampoo and conditioner products called "Pantene Pro-V Nature Fusion" that featured an image of an avocado on a green leaf and a gold vitamin on the front label. *McGinity*, 69 F.4th at 1095-96. The plaintiff argued that she read and understood these statements and images together to mean that all of the product's ingredients were "natural," even though it was made with both natural and synthetic ingredients. *Id.* at 1096.

In reviewing the product's front label, the Ninth Circuit reasoned that the front label was, at best, "ambiguous" because "Nature Fusion" could mean "that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely." *Id.* at 1098. The Court noted that "[a]lthough the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural." *Id.* In finding that no reasonable consumer would be deceived, the Court explained that any "ambiguity can be resolved by reference to the back label" where the ingredients list "clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients." *Id.* at 1099.

Here, the Ninth Circuit's reasoning in *McGinity* applies with full force. As discussed above, there is no statement on the front of either Product representing that the proper dosing is one tablet. Moreover, and importantly, *the Supplement Facts and Directions appear, at least in part, on the front of both Products*, even though the entirety of the Supplement Facts and Directions do not fit and a consumer has to turn the bottle slightly to read the entirety of both sections. Which is, of course, what any reasonable consumer would do in purchasing a product to be orally ingested. Wittman's suggestion, that consumers should be allowed to ignore the Supplement Facts and Directions entirely because they do not completely fit on the front panel, finds no support in law.

At best, the need to turn the bottles slightly creates an ambiguity regarding the

dosing for the Products. However, as in *McGinity*, any perceived ambiguity in these front panel statements is completely dispelled in two places on the Products' labels—the **Supplement Facts** and the **DIRECTIONS**—both of which can be seen with nothing more than a slight turn of the wrist. In both places on the Calcium label, the dosage is listed as two softgels (and the Servings Per Container is listed as 60). And in both places on the Glucosamine label, the dosage is listed as three capsules (and the Servings Per Container is listed as 40). Given these disclosures, which begin on the front panel of each Product, a reasonable consumer would not share in Wittman's alleged interpretation of the label. Accordingly, Wittman's claims under the CLRA, UCL, and FAL should be dismissed with prejudice. *McGinity*, 69 F.4th at 1099; *Bryan,* 2024 WL 4866952, at *1.

**B. Wittman has not plausibly alleged any predicate violations to support a claim under the UCL's unlawful prong.**

The UCL's "unlawful" prong "'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citation omitted); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 880 (2017) ("'[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.'" (citation omitted)). Where a plaintiff fails to plead the elements of the alleged predicate law, dismissal of a UCL "unlawful" prong claim is required. *Wilson*, 668 F.3d at 1140; *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.3 (9th Cir. 2009) (holding that the plaintiffs could not state a UCL unlawful prong claim because they "failed to allege" the predicate violation).

As an initial matter, to the extent Wittman premises her "unlawful" prong claim on the alleged violations of the CLRA and FAL (Complaint ¶ 71 at p.20), that claim necessarily fails for the same reasons set forth above.

Wittman further alleges that her "unlawful" prong claim is predicated on "violating California Civil Code §§ 1709-1711," "violating the California Commercial Code for breaches of express and implied warranties," and "violating California's Sherman Act, Cal. Health & Safety Code § 110390." (Complaint ¶ 71 at p.20). But Wittman makes no effort

to plead the specific elements of these statutes—precisely the type of "formulaic recitation" that *Twombly* holds insufficient to survive a motion to dismiss. *Twombly,* 550 U.S. at 548. This failure alone warrants dismissal. *Id.*; *Wilson*, 668 F.3d at 1140; *Birdsong*, 590 F.3d at 960.

Even if the Court were to look beyond this pleading deficiency, Wittman has not plausibly alleged facts sufficient to state a claim under any of these statutes.

California Civil Code §§ 1709–1711 each require a plaintiff to plausibly allege "intent" to defraud—*i.e.*, that the defendant was *aware* of the allegedly fraudulent conduct at the time of sale. *See Wilson*, 668 F.3d at 1140 (affirming dismissal of UCL unlawful prong claim predicated on Cal. Civ. Code §§ 1709 and 1710 where the plaintiff failed to allege the requisite intent element); Cal. Civ. Code § 1711. Wittman has not done so. Nor can she plausibly allege that CVS intended to "conceal" the dosing information, as it was openly disclosed on the Products in two separate locations. Wittman's "merely conclusory" allegations are insufficient to establish intent as a matter of law. *Wilson*, 668 F.3d at 1140. The defendant must also have committed a fraudulent act or engaged in deception. As set forth above, Wittman has not plausibly alleged that either Product's packaging is false or deceptive. Wittman therefore has not stated any claims under Cal. Civ. Code §§ 1709–1711.

Wittman's breach of express and implied warranty claims fare no better. To state such claims, Wittman must identify an "affirmation of fact or promise or a description of the goods" or "promises or affirmation of fact made on the container or label" of the Product. Cal. Com. Code § 2313(a); Cal. Com. Code § 2314(2)(f). Wittman has not done so. As discussed above, nowhere on either Products' packaging is a promise made (or does either of the Products state) that the proper dosing is one softgel or capsule. Absent any such affirmation, Wittman has not stated any breach of warranty claims (as further addressed below).

Finally, section 110390 of the Health & Safety Code makes it unlawful to "disseminate any false advertisement of any food." This requires Wittman to plausibly allege that a reasonable consumer would be misled by the Products' packaging. *See Wong v. Iovate Health Scis. U.S.A. Inc.*, 2025 WL 821451, at **7-8 (E.D. Cal. Mar. 14, 2025) (applying

reasonable consumer test to alleged Sherman Law violation and dismissing UCL claim) (collecting cases). As set forth above, Wittman has not done so, and her attempt to state a claim under the Sherman Law thus fails for the same reasons.

Accordingly, dismissal of Wittman's UCL "unlawful" prong claim is warranted.

**C. Wittman lacks standing to bring claims related to the Glucosamine product.**

A person has statutory standing to bring a claim under the UCL, FAL, or the CLRA "*only if* she establishes that (1) she 'has suffered' 'economic injury' or 'damage,' and (2) this injury or damage 'was the result of, i.e., *caused by*,' the unfair business practice, false advertising or the CLRA violation 'that is the gravamen of [her] claim.'" *Shaeffer,* 44 Cal. App. 5th at 1137 (first emphasis added; subsequent emphasis original). Wittman does not allege she purchased, or has an intent to purchase, the Glucosamine product, which is a complex carbohydrate supplement which is quite different from the mineral + vitamin supplement Wittman actually allegedly purchased.

In light of this statutory requirement, "[t]here is a split in authority among district courts in the Ninth Circuit [regarding] whether plaintiffs have Article III standing to bring claims for products they did not personally purchase but that were purchased by unnamed class members." *Oh v. Fresh Bellies, Inc.*, 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024) (collecting cases). On one hand, a number of district courts have recently found that "the 'substantial similarity' analysis appears to be inconsistent with the basic concept of standing." *See id.* On the other hand, district courts have held that class action plaintiffs can bring claims for products they did not purchase if the products and underlying theories of deception are plausibly alleged to be "substantially similar." *Id.*

Here, Wittman lacks standing to pursue claims concerning the Glucosamine product under either approach.

First, Wittman has not incurred any cognizable injury related to the Glucoasmine. "[T]hat a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to

which they belong and which they purport to represent." *McVay v. Kroger Co.*, 2026 WL 713006, at *5 (C.D. Cal. Feb. 3, 2026) (citation omitted). Although Wittman attempts in her Complaint to establish "substantial similarity" between the Calcium she bought and the Glucosamine she did not purchase, "'[t]he similarity of a product, by itself, does not explain how Plaintiff suffered an injury traceable to the allegedly wrongful conduct of another.'" *Id.* at *5 (citation omitted) (quoting *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021)).

Second, even if this Court were to apply the "substantial similarity" test, Wittman has failed to plead facts sufficient to demonstrate that the Glucosamine is "substantially similar" to the Calcium that she purchased. "Under the substantial similarity test, courts consider whether the products at issue and alleged misrepresentations are substantially similar." *Gamez v. Summit Nats. Inc.*, No. 2022 WL 17886027, at *6 (C.D. Cal. Oct. 24, 2022).

Here, Wittman's Complaint omits sufficient allegations from which the Court could conclude that the Calcium and Glucosamine are substantially similar. Wittman alleges only that both list the amount of one or more nutrients on the front label and have dosages of more than on tablet. (Complaint ¶ 40). But Wittman ignores the fact that the Glucosamine, which she did not purchase, is a complex carbohydrate supplement, which is quite different from the mineral + vitamin Calcium supplement Wittman actually allegedly purchased. Moreover, the dosages are different for the two Products: the Glucosamine dosage is three capsules, while the Calcium dosage is two softgels. The labels of the two Products also look quite different, as shown above. (*See also*, Complaint, p.4). Moreover, there are no allegations that the prices of the two Products are the same, nor that consumers claim similar monetary harm. Accordingly, Wittman's claims are subject to dismissal to the extent they are based on the Glucosamine product as opposed to the Calcium product.

**D. Wittman's claims for breach of express and implied warranty fail because there is no unequivocal promise that the dosage is a single softgel or capsule.**

Under California law, to state a claim for breach of express warranty, a plaintiff must show "(1) [the seller] made an affirmation of fact or promise or provided a description

of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1199 (S.D. Cal. 2021) (internal quotation and citation omitted). "To constitute a warranty and be actionable, the statement must be specific and unequivocal." *Id.* (internal quotation and citation omitted).

Wittman's fourth claim, for breach of express warranty, is not actionable because the Products' labels do not make any affirmative promises, *i.e.*, there is no unequivocal promise that the dosage is per softgel or per capsule. *See, e.g.*, *Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 3838453, at *10 (N.D. Cal. Sept. 1, 2017) (holding that, while representations on beer labels could mislead a reasonable consumer to believe the beer was brewed in Hawaii, the representations did not breach an express warranty because they "[did] not amount to an unequivocal statement or promise to the consumer that Kona beer is brewed exclusively in Hawaii."). Here, because there are no unequivocal statements or promises that the dosage is one tablet on either Product's label, Wittman's claim for breach of express warranty thus fails.

Wittman's fifth claim, for breach of implied warranty, is premised on similar grounds and thus fares no better. As the *Broomfield* court held, "Plaintiffs' implied warranty of merchantability claim, which is based solely on whether the product in dispute 'conforms to the promises or affirmations of fact' on the product packaging, rises and falls with the express warranty claim." *Broomfield*, 2017 WL 3838453 at *11.

**E. Wittman's negligent and intentional misrepresentation claims fail because there is no unequivocal promise that the dosage is a single softgel or capsule.**

Wittman's sixth and seventh claims are common law fraud claims for intentional and negligent misrepresentation. *See See Biggs v. Bank of Am. Corp.*, 2017 WL 11648863, at **3, 8 n.5 (C.D. Cal. July 28, 2017) (equating common law frauds with intentional and negligent misrepresentation); *Just Film, Inc. v. Merch. Servs., Inc.*, 2011 WL 3809908, at *12 (N.D. Cal. Aug. 29, 2011) (same). Wittman's fraud-based claims fail for the same reason as her warranty claims—there is no false affirmation of fact on the Product labels.

To state a claim for intentional misrepresentation under California law, Wittman must establish: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). To state a claim for negligent misrepresentation, Wittman must establish that CVS made the misrepresentation without '"reasonable ground for believing it to be true."' *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 174 (2003) (quoting Cal. Civ. Code §§ 1710(2), 1572(2)).

The standard for fraud claims is higher than for claims under consumer protection statutes in that '"[a] [common law] fraud deception must be actually false."' *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009), aff'd 464 F. App'x 651 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *see also Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332 (1998) ("the concept encompassed in the phrase 'likely to be deceived' has no relationship to the concept of common law fraud, which is also sometimes referred to as deception"). Thus, while a "perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information" may be actionable under consumer protection statutes, it is not actionable under common law fraud. *Day*, 63 Cal. App. 4th at 332–33.

The Product labels do not contain a false affirmation of fact necessary to state a claim under intentional or negligent misrepresentation. Accordingly, dismissal of Wittman's claims for negligent and intentional misrepresentation is warranted.

**F. Wittman's claim for unjust enrichment fails.**

Because Wittman's CLRA, FAL, and UCL claims fail for the reasons discussed above, her eighth claim for unjust enrichment is also subject to dismissal. As the Ninth Circuit held in *Chong v. Nestlé Water North America, Inc.*, 2021 WL 4938128, at *1 (9th Cir. 2021), where—as here—a plaintiff fails to allege a cognizable violation of the UCL, FAL, or CLRA, and does not otherwise point to any reason why it would be "unjust" for the defendant to retain proceeds from the sale of the product at issue, dismissal of the

plaintiff's claim for unjust enrichment is appropriate.

**G. Wittman lacks standing to pursue injunctive relief.**

To establish standing for injunctive relief, a plaintiff must demonstrate a "a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Impos. Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *see also Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). "Where standing [for injunctive relief] is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [she] will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (citation omitted).

Consistent with this requirement, courts routinely dismiss claims for injunctive relief where, as here, a plaintiff can simply review a product's label in the future to avoid the alleged harm. *See Kenney v. Fruit of the Earth, Inc.,* No. 23-55583, 2024 U.S. App. LEXIS 27083, at *3 (9th Cir. Oct. 25, 2024) (affirming dismissal of injunctive relief claim where the plaintiff "need not purchase the sunscreen again to determine whether it has non-zinc active ingredients"); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 U.S. Dist. LEXIS 217534, at *12-13 (C.D. Cal. Oct. 17, 2018) (finding plaintiff lacked standing for injunctive relief because "now that [p]laintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel"); *McVay*, 2026 WL 713006, at *5 (dismissing injunctive relief claim where "plaintiffs now know to check the ingredients list on the packaging to determine if defendants added citric acid to the products at issue").

The same result is warranted here. There is no plausible likelihood that Wittman will experience the same alleged injury again because her allegations make clear that she is clearly and unequivocally aware of the presence of the Products' dosing instructions on the labels. The dosing information appears in the Product's Supplement Facts panel, precisely where FDA regulations require it to be disclosed. Before Wittman purchased the Calcium product—and inarguably before purchasing any product in the future (including, for example, the Glucosamine product)—Wittman will determine the proper dosing by simply reading the label. Wittman will do so without opening, using, or even purchasing either

Product in the future. Because Wittman's own knowledge eliminates any threat of future harm, she lacks standing to pursue injunctive relief, and her claim for injunctive relief should be dismissed.

**CONCLUSION**

For the foregoing reasons and such additional reasons as may be presented, CVS respectfully requests the Court dismiss Wittman's Complaint with prejudice.

Dated: August 31, 2026

TATRO TEKOSKY SADWICK LLP

By: */s/ René P. Tatro*
René P. Tatro, Esq.
Attorneys for Defendant CVS Pharmacy, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August 2026, I electronically filed

**CVS PHARMACY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Lilach H. Klein
Zachary M. Crosner
**Crosner Legal, P.C.**
9440 Santa Monica Blvd., Ste 301
Beverly Hills, CA 90210
lilach@crosnerlegal.com
zach@crosnerlegal.com

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
ltfisher@bursor.com

/s/ *Karen L. Roberts*
Karen L. Roberts