**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Max S. Roberts (SBN 363482)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HELEN WITTMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CVS PHARMACY, INC.,

Defendant.

Case No.: 5:26-cv-02827-SSS (DTBx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Date: November 20, 2026
Time: 2:00 p.m.
Ctrm: Riverside Ctrm. 2, 2nd Floor (Via Zoom)
Judge: Hon. Sunshine S. Sykes

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....... 1
BACKGROUND ....... 2
LEGAL STANDARD ....... 3
ARGUMENT ....... 4
I. REASONABLE CONSUMERS ARE MISLED BY DEFENDANT'S ADVERTISING ....... 4
  A. The Products' Front Label Dosage Representations Are Affirmatively Misleading ....... 4
  B. The Products' Rear Labels Do Not Shield Defendant From Liability ....... 10
II. PLAINTIFFS' REMAINING CLAIMS ARE ADEQUATELY PLED ....... 11
  A. Plaintiff Adequately Pleads An Unlawful UCL Claim ....... 11
  B. Plaintiff Has Standing To Sue For Substantially Similar Products ....... 12
  C. Plaintiff States Claims For Breach Of Express And Implied Warranty ....... 14
  D. Plaintiff States Claims For Negligent And Intentional Misrepresentation ....... 16
  E. Plaintiff May Pursue Her Unjust Enrichment And Injunctive Relief Claims, Notwithstanding Defendant Waived Any Challenge To Them In Its Motion ....... 16
    1. Defendant Failed To Comply With L.R. 11-6 ....... 16
    2. Plaintiff's Unjust Enrichment Claim Is Not Barred ....... 17
    3. Plaintiff Has Standing To Seek Injunctive Relief ....... 18
CONCLUSION ....... 19

# TABLE OF AUTHORITIES

**Cases**

*Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770 (S.D. Cal. Mar. 20, 2023) .......... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 (N.D. Cal. July 20, 2012) .......... 13

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 17

*Barrales v. New Chapter, Inc.*, 2025 WL 1584424 (C.D. Cal. June 4, 2025) .......... *passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3

*Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (4th Dist. 2018) .......... 5, 6, 7, 9, 14

*Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889 (N.D. Cal. Jan. 2, 2024) .......... 8, 10, 15

*Cho v. Hyundai Motor Company, Ltd.*, 636 F.Supp.3d 1149 (C.D. Cal. 2022) .......... 13

*Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897 (N.D. Cal. 2021) .......... *passim*

*Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F.Supp.3d 887 (N.D. Cal. 2014) .......... 12

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) .......... 2, 18

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) .......... 11

*DiGiacinto v. RB Health (US) LLC*,
668 F.Supp.3d 950 (N.D. Cal. 2023)....12, 15

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016)....6

*Edwards Lifesciences Corp. v. Meril Life Sciences Pvt. Ltd.*,
2021 WL 1312748 (N.D. Cal. Apr. 8, 2021)....4

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)....19

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022)....19

*Hadley v. Kellogg Sales Company*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017)....15

*Hartwich v. Kroger Co.*,
2021 WL 4519019 (C.D. Cal. Sept. 20, 2021)....4

*Jones v. Nutiva, Inc.*,
2016 WL 5210935 (N.D. Cal. Sept. 22, 2016)....15

*Lilly v. ConAgra Foods, Inc.*,
743 F.3d 662 (9th Cir. 2014)....11

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021)....13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008)....4

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023)....9, 10

*Miller v. Ghiradelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012)....12

*Mollicone v. Universal Handicraft, Inc.*,
2017 WL 440257 (C.D. Cal. Jan. 30, 2017)....13

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 8
*Mui Ho v. Toyota Motor Corp.*,
931 F. Supp. 2d 987 (N.D. Cal. 2013) .......... 11
*Oh v. Fresh Bellies, Inc.*,
2024 WL 4500727 (C.D. Cal. Oct. 15, 2024) .......... 13
*Robertson v. Clean Control Corp.*,
2024 WL 5193852 (C.D. Cal. Dec. 18, 2024) .......... 15
*Salazar v. Walmart, Inc.*,
83 Cal. App. 5th 561 (4th Dist. 2022) .......... 6, 8
*Shank v. Presidio Brands, Inc.*,
2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .......... 18
*Swetala v. Quten Research Institute, LLC*,
2025 WL 950627 (E.D. Cal. Mar. 28, 2025) .......... *passim*
*Tarvin v. Olly Public Benefit Corp.*,
756 F. Supp. 3d 797 (C.D. Cal. 2024) .......... *passim*
*Testone v. Go Macro, LLC*,
2026 WL 948510 (S.D. Cal. April 8, 2026) .......... 7
*Tucker v. Post Consumer Brands, LLC*,
2020 WL 1929368 (N.D. Cal. April 21, 2020) .......... 18
*Walters v. Vitamin Shoppe Industries*,
701 F. App'x 667 (9th Cir. 2017) .......... *passim*
*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) .......... *passim*
*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .......... 11, 18

**Rules**

C.D. Cal. L.R. 7-3 .......... 11

C.D. Cal. L.R. 11-6 ........ 16, 17

## INTRODUCTION

This is a straightforward consumer deception case, and it is governed by a body of Ninth Circuit and California authority that is squarely on point. Plaintiff Helen Wittman ("Plaintiff") alleges the advertising and marketing of Defendant CVS Pharmacy, Inc.'s ("Defendant") CVS Calcium 1200 mg + D3 and CVS Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg products (together, the "Products") is deceptive. Compl., ¶¶ 1-3. Each Product's front label prominently advertises an unqualified dosage, for example, "Calcium 1200 mg," but says nothing on the front to disclose that the advertised dosage is achieved only by consuming multiple softgels or capsules. *Id*., ¶¶ 2-3, 12-13. In truth, a consumer must ingest two softgels of the Calcium Product and three capsules of the Glucosamine Product to obtain the advertised dosage, as each unit contains only a fraction of what the front label promises. *Id*. Consumers thus receive only half or a third of the advertised value while paying the full purchase price. *Id*., ¶ 41.

Notably, (i) Defendant's competitors advertise either a "per serving" qualifier or the amount per caplet on the front of the bottle; and (ii) Defendant's other CVS vitamins advertise the amount per caplet on the front. *Id.* ¶¶ 20-21, 24. A reasonable consumer evaluating Defendant's packaging of the Products would thus believe the dosage amount on the front is the amount *per caplet*, not *per serving*. *See id.* ¶ 16. Thus, a reasonable consumer would believe they are getting a bargain—1200 mg per softgel as opposed to needing to take multiple softgels or getting a lower amount per caplet. *Id*. In truth, "Defendant [i]s charg[ing] consumers a premium for the Products, while cutting costs and reaping the financial benefits of selling a supplement with less than the advertised dosage in each Products." *Id*.

Courts within the Ninth Circuit have repeatedly declined to dismiss cases involving materially identical allegations. *See, e.g.*, *Barrales v. New Chapter, Inc*., 2025 WL 1584424, at *1 (C.D. Cal. June 4, 2025) ("4g of probiotic fiber" misleading where two gummies were needed to achieve that dosage); *Walters v. Vitamin Shoppe*

*Industries*, 701 F. App'x 667, 670 (9th Cir. 2017) ("1000 mg" calcium representation actionable where two chews were required to achieve the full 1000 mg of calcium toted on the product's front panel); *Swetala v. Quten Research Institute, LLC*, 2025 WL 950627, at *1 (E.D. Cal. Mar. 28, 2025) (various dosage representations, including "1000 mg" and "420 mg" misleading where more than one capsule were needed to receive the advertised dosage); *Cimoli v. Alacer Corp*., 546 F. Supp. 3d 897, 902-04 (N.D. Cal. 2021) ("750 mg of Vitamin C" misleading where 750 mg representation only applied per serving, and not per gummy).

Under the controlling framework, a front label that is plausibly misleading is tested on its own at the pleading stage; the back label Supplement Facts panel cannot be used to rewrite it. *See Whiteside v. Kimberly Clark Corp*., 108 F.4th 771, 781 (9th Cir. 2024). That is dispositive of Defendant's central argument. Defendant's remaining grounds fare no better. Plaintiff adequately pleads a UCL "unlawful" prong claim because her predicate labeling violations are themselves well pleaded, and she has standing to pursue claims concerning the substantially similar Glucosamine Product. Defendant's warranty, misrepresentation, and unjust enrichment arguments rise and fall with the reasonable consumer question and independently satisfy California law. And a previously deceived consumer who alleges she would purchase the Products again if truthfully labeled has standing to seek injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Defendant's Motion should be denied in its entirety.

## BACKGROUND

Defendant makes, distributes, sells, and markets two dietary supplements: CVS Calcium 1200 mg + D3 and CVS Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg. Compl., ¶ 1. Plaintiff alleges Defendant "deceptively labels the Products by misrepresenting the dosage amount of each softgel or capsule." *Id*. ¶ 2. Each Product's front label prominently advertises a dosage amount and a unit count, for example, "Calcium 1200 mg" and "120 softgels," leading reasonable consumers

to believe that each softgel or capsule contains the advertised dosage. *Id*. ¶ 2. In fact, a consumer must ingest two softgels of the Calcium Product to obtain the advertised 1,200 mg of calcium, and three capsules of the Glucosamine Product to obtain the advertised 1,500 mg of glucosamine HCl and 1,200 mg of chondroitin sulfate. *Id*. ¶¶ 3, 12-15. The Complaint contrasts the Products with competitors, and with Defendant's own other supplements that label truthfully by advertising the per-unit dosage or including a "per serving" qualifier on the front label. *Id*. ¶¶ 20-26.

"Plaintiff Helen Wittman purchased the CVS Calcium 1200 mg + D3 Product from a CVS store located at 26973 Newport Rd, Menifee CA 92584 in or around March 2026 in reliance on the Products' front label advertising." Compl., ¶ 27. "In deciding to purchase the Product, Plaintiff read and relied on the dosage information displayed on the front label, which led Plaintiff to believe that each softgel in the Product contained the advertised dosage – 1,200 mg of calcium per softgel. At the time of purchase, Plaintiff did not know that the advertised dosage was false and misleading, and that more than one softgel would need to be consumed to receive the advertised dosage." *Id*., ¶ 28. "Plaintiff would not have purchased the Product, or would not have paid as much as she did for it, had she known that each softgel contained only a fraction of the advertised dosage." *Id*., ¶ 29. Plaintiff brings this action on behalf of a nationwide class and California subclass, alleging violations of California's Consumers Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), breaches of express and implied warranties, negligent and intentional misrepresentation, and quasi contract/unjust enrichment. *Id*., ¶¶ 63-137.

## LEGAL STANDARD

A plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"It is rare for courts to grant a motion to dismiss under the unfair competition statutes because whether a business practice is deceptive usually will be a question of fact." *Edwards Lifesciences Corp. v. Meril Life Sciences Pvt. Ltd.*, 2021 WL 1312748, at *3 (N.D. Cal. Apr. 8, 2021); *see also Hartwich v. Kroger Co.*, 2021 WL 4519019, at *5 (C.D. Cal. Sept. 20, 2021) ("Generally, the question of whether a business practice is deceptive is a question of fact that is appropriate for resolution on a motion to dismiss only in rare circumstances.") (cleaned up).

## ARGUMENT

### I. REASONABLE CONSUMERS ARE MISLED BY DEFENDANT'S ADVERTISING

#### A. The Products' Front Label Dosage Representations Are Affirmatively Misleading

Defendant first argues no reasonable consumer would be misled. Not so. Plaintiff alleges the Products' front labels communicate a specific dosage amount to consumers without any qualification, for example "Calcium 1200 mg" and "Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg." Compl., ¶¶ 12-13. Defendant's competitors—and even Defendant itself on its other CVS-branded products—either state the serving size prominently on the front, or state the amount per caplet on the front. ¶¶ 20-21, 24. Reasonable consumers would therefore expect each softgel in the Calcium product to contain 1200 mg calcium, and each capsule in the Glucosamine product to contain 1500 mg glucosamine HCl and 1200 mg chondroitin sulfate as advertised. *Id.*, ¶ 16. But in fact, consumers must take two or more softgels or caplets to receive the advertised dosage. *Id.*, ¶¶ 12-15.

The Ninth Circuit has found such representations plausibly deceptive in *Walters v. Vitamin Shoppe Industries*, 701 F. App'x 667 (9th Cir. 2017)—a case

Defendant does not even address, but one that "forecloses Defendant's argument." *Tarvin v. Olly Public Benefit Corp.*, 756 F. Supp. 3d 797, 806 (C.D. Cal. 2024). In *Walters*, "the Ninth Circuit reversed a district court's dismissal of plaintiff's fraud claim in a case where, as here, plaintiff alleged that defendant's products' front labels were misleading because defendant displayed dosage information per serving rather than per unit." *Id.* at 804 (citing *Walters*, 701 F. App'x at 670). The Ninth Circuit rejected that, as a matter of law, consumers "have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back." *Walters*, 701 F. App'x at 670.

Multiple district courts have followed *Walters* in finding that unqualified dosage representations could plausibly mislead reasonable consumers. *See*, *e.g.*, *Swetala*, 2025 WL 950627, at *5 ("Plaintiff sufficiently pled that a reasonable consumer would be misled by the front label" where front label indicated "1000mg" dosage "with no additional qualifications or information on the number of servings."); *Tarvin v. Olly Public Benefit Corp.*, 756 F. Supp. 3d 797, 804 (C.D. Cal. Nov. 12, 2024) (same); *Barrales*, 2025 WL 1584424, at *6 (finding reasonable consumers could believe "4g prebiotic fiber" to mean that each gummy contains four grams of fiber); *Cimoli*, 546 F. Supp. 3d at 902-04 (finding "Plaintiff has properly alleged an actionable representation" in case challenging "750 mg" dosage representation on front label of gummy vitamins, notwithstanding product's back-label clarification of dosage as per serving rather than per gummy).

Defendant's argument that it would be "unreasonable" for dietary supplement consumers not to review the Products' rear Supplement Facts panel (MTD at 11:6) has been explicitly rejected by both the Ninth Circuit and the California Court of Appeal. *Walters*, 701 F. App'x at 670 ("Walters did not have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back."); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (4th Dist. 2018) (Bayer feels the reasonable consumer will be so motivated to

ascertain the precise amounts of vitamins that *of course* he or she will scrutinize the back. We don't think such a conclusion can be made as a matter of law at the pleading stage.") (emphasis in original). Indeed, Defendant's position would require consumers to examine other sides of the Products to correct a misleading front label representation. Courts have rejected that, as a matter of law and at the pleading stage, "*all* reasonable consumers of vitamins are [] label-scrutinizers." *Brady*, 26 Cal. App. 5th at 1176 (emphasis in original); *see also*, *e.g.*, *Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561, 567 (4th Dist. 2022) ("California law [] does not require reasonable consumers to look beyond misleading representations on the front of a product to discover the truth from the ingredient list in small print on the back of a product.") (cleaned up).

Defendant's citation to *Ebner* is misplaced. *See* MTD at 11:16–12:2. There, the court held there was an "absence of any statement or other depictions anywhere on the package about [the alleged issue]." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016). The Ninth Circuit made clear its ruling in *Ebner* "was not that the plaintiff failed to prove that the label's representations were deceptive, but that the label made *no representation at all*." *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. July 17, 2024) (italics in original). By contrast, here, the dosage misrepresentations are plainly stated on the Products' front labels and these representations are contradicted by additional information on the back of the Products. *See*, *e.g.*, *Cimoli*, 546 F. Supp. 3d at 904 (in a similar dosage misrepresentation case challenging "750 mg" representation, finding the allegations in *Ebner* "dissimilar to those before the Court" and holding *Ebner* does not "carr[y] the day for Defendant in light of *Walters II*, where the Ninth Circuit characterized representations nearly identical to those at issue here as 'potentially misleading.'"); *Tarvin*, 756 F. Supp. 3d at 801-02, 806 (distinguishing *Ebner* and finding reasonable consumers could be misled by "5 mg" representation where two gummy units were required to obtain 5 mg of melatonin as advertised on Product's front label).

Defendant's assertion that the Supplement Facts panel and Directions "begin on the right side of the front of the Products' labels" (MTD at 12:7) is disingenuous, as reasonable consumers cannot view the information contained within the Supplement Facts panel or read the Directions without physically rotating the Products to view them:







*See* Compl., ¶ 13. The fact that the Products are packaged in a cylindrical container does not render the rear label as part of the Products' front labels in terms of qualifying the front label's misrepresentation. *See, e.g.*, *Testone v. Go Macro, LLC*, 2026 WL 948510, at *5 (S.D. Cal. April 8, 2026) (explaining "[t]he California Court of Appeal has contrasted cases in which qualifying information was presented on the same side as a challenged statement, against cases in which qualifying information was presented on a different side of the packaging.") (citing *Brady*, 26 Cal. App. 5th at 1167-70).

Defendant contends that to be deceptive, the front labels would need to specifically state, "a single softgel provides 1,200 mg of calcium." MTD at 12:8-9.

Not so. California law recognizes that even "true statements couched in [] a manner that are likely to mislead or deceive the consumer are actionable." *Salazar*, 83 Cal. App. 5th at 567 (cleaned up). Here, the only information on the front label is that the Calcium Product contains 1200 mg of calcium, and the Glucosamine Product contains 1500 mg glucosamine HCl and 1200 mg chondroitin sulfate, without any qualification. Compl., ¶ 13. The Ninth Circuit and numerous district courts have found that a reasonable consumer would plausibly believe the specified dosages applies per softgel or capsule unit, rendering such representations deceptive. *See, e.g.*, *Tarvin*, 756 F. Supp. 3d at 806-07 ("As *Walters* [] made clear, however, representation of dosage amount on the front label without qualifying serving information may be considered 'unambiguously deceptive' to survive a 12(b)(6) motion."); *Swetala*, 2025 WL 950627, at *5 ("[T]he absence of specific statements correlating dosage to the unit number is synonymous with the product label in *Walters* … Thus, the Court finds that Plaintiff sufficiently pled that a reasonable consumer would be misled by the front label."); *Barrales*, 2025 WL 1584424, at *6 ("Plaintiff here has plausibly alleged that the front label conveys a concrete and unambiguous meaning to a reasonable customer that one gummy contains 4 grams of fiber. That is sufficient….") (cleaned up).

Relying on *Moore*, Defendant argues that "a reasonable consumer does not "ignore generally known facts about the type of product she is considering purchasing." MTD at 12:18–13:1 (citing *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021)). In *Moore*, the phrase "100% New Zealand Manuka Honey" was ambiguous because the advertised "100%" could relate either to the place of origin (New Zealand) or floral source (Manuka)—based on the syntax of the phrase. 4 F.4th at 882. Dissimilarly here, the Products' "1200 mg" or "1500 mg" dosage representations do not innately communicate two different meanings, leaving a consumer to investigate which applies. For example, "1200 mg" commonly and clearly denotes "twelve hundred milligrams." *See Caldwell v. Nordic Naturals, Inc.*,

709 F. Supp. 3d 889, 901-02 (N.D. Cal. Jan. 2, 2024) (distinguishing *Moore*; finding a "2x" moniker was not inherently ambiguous and clearly denotes "two times."). Additional information that could be investigated (that the Products' softgels and capsules contain only a fraction of the advertised dosage) is contradictory to and not a mere clarification of an ambiguity in the front label. Because the Products' front label dosage representations are not inherently ambiguous, "a reasonable consumer would not have been on notice to investigate the meaning of the front label further—even by reviewing the back label of the product at issue; this alone ends the inquiry and distinguishes the case from *McGinity* and *Moore*." *See id.*; *see also Whiteside*, 108 F.4th at 781 (9th Cir.) (discussing *Brady*; finding "defendant was precluded from relying on the back label because the plaintiff had plausibly alleged that reasonable customers would see the front label as making an unambiguous representation. [] Put another way, reasonable consumers would not necessarily require more information before concluding that they needed to take only one vitamin daily.").

Defendant's argument that Plaintiff's allegations require "a series of inferential leaps that defy common sense," and that such labeling is not "unambiguously deceptive" (MTD at 13:15-17) has been repeatedly rejected by courts considering materially identical allegations. *See, e.g.*, *See Swetala*, 2025 WL 950627, at *4; *Cimoli*, 546 F. Supp. 3d at 903; *Barrales*, 2025 WL 1584424, at *6; *Tarvin*, 756 F.Supp.3d, at 806-07. Here, as the only information on the front label regarding dosage is that the Calcium Product contains 1200 mg of calcium, and the Glucosamine Product contains 1500 mg glucosamine HCl and 1200 mg chondroitin sulfate, without any further information on the front labels, it is not only reasonable but more than likely that consumers would believe the specified dosages apply per softgel or capsule unit. *See*, *e.g.*, *Walters*, 701 F. App'x at 670; *Swetala*, 2025 WL 950627, at *5; *Tarvin*, 756 F.Supp.3d at 804; *Barrales*, 2025 WL 1584424, at *6; *Cimoli*, 546 F.Supp.3d at 902-04.

### B. The Products' Rear Labels Do Not Shield Defendant From Liability

Defendant next argues that the Products' Supplement Facts and Directions on the Products' rear labels dispel any deception. *See* MTD at 13:18-28. As discussed above, the Ninth Circuit rejected that argument in *Walters*, and district courts have followed suit. Argument § I.A, *supra*; *see also Walters*, 701 F. App'x at 670; *Tarvin*, 756 F.Supp.3d, at 806-07; *Swetala*, 2025 WL 950627, at *5; *Cimoli*, 546 F. Supp. 3d at 903 (rejecting argument that product's back label clarifies the dosage of Vitamin C is per serving where plaintiff alleged reasonable consumers believed each gummy contained 750 mg of Vitamin C);

Defendant's reliance on *McGinity* does not alter the result. *See* MTD at 14-15 (citing *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1095-96 (9th Cir. 2023)). In *McGinity*, the term "Nature Fusion" presented inherent ambiguity because the term "Fusion" indicates a mix of products but does not specify that mix—putting the consumer on notice that the product might include both natural and synthetic ingredients with an unspecified portion of each. 69 F.4th at 1095-99; *see also Whiteside*, 108 F.4th at 780 (finding "Nature Fusion" so devoid of any concrete meaning that there was nothing "from which *any* inference could be drawn or on which *any* reasonable belief could be based about") (italics in original). Here, the Products' front labels are affirmatively misleading and do "not include the sort of inherent ambiguity which might put a consumer on notice to investigate the meaning of the label further." *See Caldwell*, 709 F.Supp.3d at 901 (distinguishing *McGinity* and finding "'2X" commonly and clearly denotes 'two times.'"). "[N]o back label analysis [is] required." *Barrales*, 2025 WL 1584424, at *6.

As the *Tarvin* court recognized, "*McGinity* did not overrule any long-standing Ninth Circuit precedent," and "a front label may be 'unambiguously deceptive' for Rule 12(b)(6) purposes 'even if it has two possible meanings, so long as the plaintiff has plausibly alleged that are reasonable consumer would view the label as having

one unambiguous (and deceptive) meaning.'" *Tarvin*, 756 F. Supp. 3d at 806 (quoting *Whiteside*, 108 F.4th at 780-81).

At the very least, the Court should decline to make the factual determination urged by Defendant as to how consumers understand or interact with the Products' labels. *See Williams v. Gerber Prods. Co.,* 552 F.3d at 938 ("whether or not a reasonable consumer would be misled is usually "a question of fact not appropriate for determination [on a motion to dismiss]."); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014).

## II. PLAINTIFFS' REMAINING CLAIMS ARE ADEQUATELY PLED[1]

### A. Plaintiff Adequately Pleads An Unlawful UCL Claim

Because Plaintiff has adequately pleaded her CLRA and FAL claims as discussed above, she also adequately alleged that Defendant's conduct is "unlawful" under the UCL. *See Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) ("Plaintiffs can plead a UCL violation under the 'unlawfulness' prong by pleading that a business practice violated a predicate federal, state, or local law" such as "the CLRA and California's express and implied warranty statutes.").

Defendant also argues that Plaintiff fails to plead fraudulent conduct or intent to defraud. *See* MTD at 16:6-16. Not so. The Complaint demonstrates that Defendant knew its dosage representations were false, misleading, or incomplete. Specifically, Plaintiff alleges that while Defendant prominently advertises the Products as containing a specific dosage amount, "each softgel does not contain the advertised

[1] The Court should decline to consider Defendant's remaining arguments regarding the UCL unlawful prong, breach of express and implied warranties, negligent and intentional misrepresentation, unjust enrichment, and standing to seek injunctive relief, as Defendant failed to meet and confer regarding these issues as required by Local Rule 7-3. *See* Local Rule 7-3 ("counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly … the substance of the contemplated motion…").

dosage amount. Instead, consumers must ingest two softgels to achieve the advertised dosage." Compl., ¶ 3. Plaintiff alleges, "Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price." Compl., ¶ 118. Further, "Defendant knew that consumers would pay more for a Products if they believed they were receiving a higher dosage than that of competitors' lawfully labeled Products. For that reason, Defendant misrepresented the dosage of its Products so that Defendant could realize greater profits." *See* Compl., ¶ 127. These allegations adequately show knowledge of falsity and intent to deceive. *See Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F.Supp.3d 887, 898 (N.D. Cal. 2014) (denying motion to dismiss negligent and intentional misrepresentation claims where plaintiff pleaded "sufficient facts from which it can be inferred that defendant either knew or should have known that the information provided was false or incomplete."); *DiGiacinto v. RB Health (US) LLC*, 668 F.Supp.3d 950, 968 (N.D. Cal. 2023) (denying motion to dismiss fraud claim where plaintiff alleged packaging of product was false and misleading, defendant knew its packaging was false and misleading, and defendant intended to induce consumers to purchase the product at a premium price).

Defendant's arguments that Plaintiff's breach of warranty claims fail are refuted in Argument § II.C, *infra*. Defendant's argument that Plaintiff has not plausibly alleged reasonable consumers would be misled is refuted in Argument § I.A, *supra*.

### B. Plaintiff Has Standing To Sue For Substantially Similar Products

Defendant argues Plaintiff only has standing to sue over the Product she purchased. *See* MTD at 17-18. However, Plaintiff has standing to assert class claims for products she did not purchase so long as the Products and misrepresentations are substantially similar. *See Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 2d 861,

868 (N.D. Cal. 2012). Defendant argues there is a split in authority, citing *Lorentzen v. Kroger Co*., 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021) and *Oh v. Fresh Bellies, Inc*., 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024). MTD at 17-18. However, the "'prevailing view' in the Ninth Circuit is that plaintiffs can bring class claims for products they did not purchase 'as long as the products and alleged misrepresentations are substantially similar.'" *See Cho v. Hyundai Motor Company, Ltd*., 636 F.Supp.3d 1149, at 1179-80 (C.D. Cal. 2022) (declining to follow *Lorentzen*).

Here, Plaintiff adequately alleges that the two Products are substantially similar, as each as they "each contain (1) a dosage representation conspicuously and prominently placed on the primary display panel of the Products' front labels, and (2) require consumption of two or more units to obtain the advertised dosage…" Compl., ¶¶ 40-41. "The misleading advertising on the Products' front labels are all the same: consumers are led to believe that each softgel or capsule contains the advertised dosage amount; however, the Products only contain half or a third of the amount of dietary supplement advertised. Consumers therefore only receive half or a third of the amount of dietary supplement promised…." *Id*. Courts have consistently held these allegations of substantial similarity are sufficient. *See, e.g*., *Astiana v. Dreyer's Grand Ice Cream, Inc*., 2012 WL 2990766 at *13 (N.D. Cal. July 20, 2012) ("[D]ifferent ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors."); *Mollicone v. Universal Handicraft, Inc*., No. 16-CV-07322, 2017 WL 440257, at *8 (C.D. Cal. Jan. 30, 2017).

Defendant's argument that the Products are not substantially similar because they contain different dosages and ingredients was rejected in *Cimoli* and *Barrales*. The *Cimoli* court found that 750 mg Vitamin C Gummy and 50 mg Elderberry Juice Concentrate products were substantially similar because despite the different ingredients and dosages (750 mg, 50 mg, vitamin C, elderberry), the alleged injury

and misrepresentations – "listing a specific quantity of a specific ingredient without indicating whether the quantity is per gummy or per serving" – were "practically identical." *Cimoli*, 546 F.Supp.3d at 907-09; *see also Barrales*, 2025 WL 1584424, at *4 (finding substantial similarity in dosage misrepresentation case where products "are all packaged products made up of units advertised to contain a particular amount of a dietary supplement" and finding "[t]he differences in the particular nutrient are immaterial to the claim or injury, and they can otherwise be raised at the class certification stage."). Here, too, the Products' ingredients and dosages are immaterial to the substantial similarity inquiry, as each Product lists a specific quantity of a specific ingredient without indicating whether the quantity is per softgel or per serving, and mislead reasonable consumers in the same way. *See* Compl., ¶¶ 2-3, 15-16, 40-41.

### C. Plaintiff States Claims For Breach Of Express And Implied Warranty

Defendant argues Plaintiff's express warranty claim fails because the labels contain no "unequivocal" promise that the dosage is per softgel or per capsule. MTD at 19:6-15. However, the Calcium Product's front label prominently states that the Product contains "1200 mg" calcium and "120 softgels," warranting that the Product is comprised of 120 softgels each containing 1,200 mg of calcium. The Glucosamine Product's front label prominently states that the Product contains "1500 mg" Glucosamine HCl, "1200 mg" Chondroitin Sulfate, and "120 capsules," warranting that the Product is comprised of 120 capsules each containing 1500 mg glucosamine HCl and 1200 mg chondroitin sulfate. Courts within the Ninth Circuit and the California Court of Appeal have found that similar allegations were sufficient to state an express warranty claim. *See, e.g., Barrales*, 2025 WL 1584424, at *6, fn. 6 (declining to dismiss express warranty claim in case involving "4g prebiotic fiber" representation where two gummies were required to achieve 4 grams of prebiotic fiber); *Brady*, 26 Cal. App. 5th at 1178 (finding plaintiff "has stated at least a prima

facie case for a valid claim of breach of [express] warranty" in case involving "One a Day" brand and "100 gummies" representations where two gummies were required by the Supplement Facts panel); *Caldwell*, 709 F.Supp.3d at 907 ("the Court has determined that one plausible interpretation of the Ultimate Omega 2X label is that it promises twice the amount of omega as the regular product" and "[e]ven assuming the label could be interpreted differently, at the motion to dismiss phase, the Court must construe the representation in the light most favorable to the Plaintiff.").

Moreover, courts regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty. *See Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770, at *4 (S.D. Cal. Mar. 20, 2023) (collecting authority). Here, because Plaintiff has alleged plausible claims under California's consumer protection statutes (*see* Argument § I.A, *supra*), she has also stated a plausible claim for breach of express warranty. *See Barrales*, 2025 WL 1584424, at *6 n. 6 ("Since Plaintiff has plausibly alleged that a reasonable consumer would be deceived, that is sufficient to allege falsity for Plaintiff's misrepresentation and express warranty claims."); *see also Robertson v. Clean Control Corp.*, 2024 WL 5193852, at *4 (C.D. Cal. Dec. 18, 2024).

Because Plaintiff has sufficiently pleaded an express warranty claim, so too has she properly pleaded her implied warranty claim. *See Hadley v. Kellogg Sales Company*, 273 F. Supp. 3d 1052, 1070 (N.D. Cal. 2017) ("implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product"); *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (plaintiff adequately plead his claim for breach of implied warranty based on product's failure to conform to the promises or affirmations of fact on the label when he sufficiently alleged that a reasonable consumer would be deceived by the representation); *DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 966-67 (N.D. Cal. Apr. 11, 2023) (plaintiff sufficiently alleged breach of implied warranty because he sufficiently alleged a breach of express warranty, and both claims hinged

on the representations on the label of the product).

**D. Plaintiff States Claims For Negligent And Intentional Misrepresentation**

Defendant argues Plaintiffs' misrepresentation claims fail because "[t]he Product labels do not contain a false affirmation of fact…" MTD at 19-20. Not so. The Complaint alleges the Calcium Product's front label affirmatively represents that the Product contains "1200 mg" of calcium and "120 softgels," conveying that the Product contains 120 softgels, each with 1200 mg of calcium. In reality, each softgel contains only 600 mg of calcium. *See* Compl., ¶¶ 12-13. The Glucosamine Product's front label affirmatively represents that the Product contains "1500 mg" glucosamine HCl, "1200 mg" chondroitin sulfate, and "120 capsules," conveying that the Product contains 120 capsules, each with 1500 mg glucosamine HCl and 1200 mg chondroitin sulfate. In reality, each capsule contains only 500 mg glucosamine and 400 mg chondroitin. *See id*.

Courts have sustained negligent and intentional misrepresentation claims based on materially similar dosage representations. *See, e.g.*, *Swetala*, 2025 WL 950627, at *6-7 (finding plaintiffs' misrepresentation claims sufficient pled where the court had "already held that Plaintiff has sufficiently plead a misrepresentation under the reasonable consumer standard"); *Barrales*, 2025 WL 1584424, at *6, fn.6 ("[t]he Court rejects on similar grounds Defendant's argument that Plaintiff's negligent and intentional misrepresentation and express warranty claims are 'barred because she never pleads... that the Products' labeling statements are actually false.' … Since Plaintiff has plausibly alleged that a reasonable consumer would be deceived, that is sufficient to allege falsity for Plaintiff's misrepresentation and express warranty claims.").

**E. Plaintiff May Pursue Her Unjust Enrichment And Injunctive Relief Claims, Notwithstanding Defendant Waived Any Challenge To Them In Its Motion**

1. *Defendant Failed To Comply With L.R. 11-6*

Local Rule 11-6.1 provides that no memorandum of points and authorities may exceed 7,000 words. Local Rule 11-6.2 further requires a memorandum of points and authorities to include, on the last page, a certificate by the attorney filing the document confirming that the memorandum complies with the word count limitation set forth in Local Rule 11-6.1. Defendant has failed to provide any such certificate. *See* MTD. Based on Plaintiff's counsel's count, Defendant exceeded the applicable word limit in presenting its arguments regarding unjust enrichment and standing to pursue injunctive relief. The Court should therefore decline to consider these arguments. Should the Court choose to consider them, Plaintiff refutes each argument below.

2. *Plaintiff's Unjust Enrichment Claim Is Not Barred*

Here, Plaintiff's unjust enrichment claim tracks Plaintiff's CLRA, FAL, and UCL claims and survives with them. *See Cimoli v. Alacer Corp*., 546 F. Supp 3d at 904 ("Because the Court has denied Defendant's motion as to Plaintiff's CLRA, FAL, UCL and common law fraud claims, the Court necessarily DENIES Defendant's motion to dismiss Plaintiff's unjust enrichment claim."). Additionally, Plaintiff alleges that "Defendant's false and misleading labelling caused Plaintiff and the Class to purchase the Products at a premium" and "[i]n this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense." Compl., ¶¶ 134-135. Moreover, "Defendant was only able to charge a premium for the Products by intentionally withholding information from Plaintiff, or otherwise misrepresenting the Products' qualities" and therefore "[i]t would be unjust and inequitable for Defendant to retain the abovementioned benefits." *See* Compl., ¶ 136. Such allegations are sufficient to allege an unjust enrichment claim. *See Astiana v. Hain Celestial Group, Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (allegations that defendant "had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" were

sufficient).

3. *Plaintiff Has Standing To Seek Injunctive Relief*

Defendant's attack on injunctive relief standing is foreclosed by *Davidson v. Kimberly-Clark*. There, the Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false," because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). The requisite threat of future harm exists where the plaintiff plausibly alleges "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 889 F.3d at 970. Plaintiff alleges exactly that. *See* Compl., ¶¶ 35-36 ("Plaintiff will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products again although she would like to."); *see also Swetala*, 2025 WL 950627, at *7-9 (declining to dismiss injunctive relief claim in case challenging "1000 mg" dosage representation).

Defendant contends that Plaintiff now knows to consult the back Supplement Facts panel and therefore faces no future injury. *See* MTD at 21. However, the Ninth Circuit has made clear that "reasonable consumers" should not "be expected to look beyond misleading representations on the front of the box to discover the truth [elsewhere on] the box." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008); *see also Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (rejecting argument that the plaintiff could read labels in the future to determine whether products were "all natural"); *see also Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *6 (N.D. Cal. April 21, 2020) ("Absent injunctive relief, plaintiff would not know whether honey is in fact a significant sweetener in defendant's product based on the front of the cereal box. Nor is the onus on plaintiff to consult the ingredient list to try to discern this fact.");

*Walters*, 701 F. App'x at 670 (9th Cir.) (plaintiff did not have duty to validate product's front label by cross checking information on the back where front label displayed dosage information per serving rather than per unit).

Accordingly, Defendant's Motion should be denied. If the Court is inclined to dismiss Plaintiff's claims for injunctive relief, Plaintiff requests it be without prejudice. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1315 (9th Cir. 2022) ("[W]here federal law bars us from considering the merits of state-law claims, we also lack authority to prevent state courts from doing so.").

## CONCLUSION

Defendant's motion to dismiss should be denied. If the Court dismisses any portion of the Complaint, Plaintiff respectfully requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated: October 9, 2026

CROSNER LEGAL, P.C.

By: */s/ Lilach H. Klein*
Lilach H. Klein

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*lilach@crosnerlegal.com*
*zach@crosnerlegal.com*

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Max S. Roberts (SBN 363482)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief contains 5,977 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 9, 2026

*/s/ Lilach H. Klein*
Lilach H. Klein
***Attorney for Plaintiff and the Proposed Class***