**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
Zachary M. Crosner (SBN 272295)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
E-mail: lilach@crosnerlegal.com
zach@crosnerlegal.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Max S. Roberts (SBN 363482)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HELEN WITTMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CVS PHARMACY, INC.,

Defendant.

Case No. 5:26-cv-02827-SSS-DTB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Date: November 20, 2026
Time: 2:00 p.m.
Ctrm: 2 – 2nd Floor
Judge: Hon. Sunshine S. Sykes

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 3

I. DEFENDANT'S MOTION FAILS TO COMPLY WITH THIS DISTRICT'S WORD-COUNT LIMITATION ..... 3

II. UNDER NINTH CIRCUIT PRECEDENT, DEFENDANT HAS NOT MET ITS BURDEN TO SHOW ITS E-MAIL PUT PLAINTIFF ON NOTICE OF THE ARBITRATION AGREEMENT ..... 4

A. Defendant Provides No Evidence Plaintiff Actually Received Or Saw The E-Mail, And Plaintiff Attests To The Opposite ..... 4

B. Defendant's Arguments And Authorities Are Unpersuasive ..... 7

C. Defendant Provides No Other Evidence Of Notice Of Or Assent To The ExtraCare Terms ..... 11

III. DEFENDANT'S "INFINITE ARBITRATION" CLAUSE IS SUBSTANTIVELY UNCONSCIONABLE ..... 12

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

*Alaoui v. Segway Powersports, Inc.*, 2026 WL 1658502 (C.D. Cal. June 5, 2026) .......... 9

*Benson v. Double Down Interactive, LLC*, 798 F. App'x 117 (9th Cir. 2020) .......... 9

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 3

*Brewer v. Jersey Mike's, Inc.*, 2026 WL 2367683 (C.D. Cal. Aug. 6, 2026) .......... 7

*Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126 (9th Cir. 2000) .......... 3

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 8

*Hooks v. Target Corp.*, 2023 WL 4680337 (C.D. Cal. May 11, 2023) .......... 12

*In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 8

*In re Uber Techs., Inc.*, 2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) .......... 8

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) .......... *passim*

*Jones v. Penney Opco, LLC*, 2025 WL 2180560 (E.D. Cal. Aug. 1, 2025) .......... 9

*Kamath v. Coinbase, Inc.*, 2024 WL 940163 (N.D. Cal. Mar. 5, 2024) .......... 8

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) .......... 3

*LaComba v. Eagle Home Loans and Investment, LLC*,
2023 WL 6201597 (E.D. Cal. Sept. 22, 2023) .......... 3, 4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .......... 3

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 3

*Ningo Aux Electric Co. v. Best Houseware Inc.*,
2026 WL 2113979 (C.D. Cal. June 8, 2026) .......... 11

*Norcia v. Samsung Telecommunications Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) .......... 9

*Phan v. Knight Sacramento SU Inc.*,
121 Cal. App. 5th 641 (3d Dist. 2026) .......... 2, 13, 14

*Pliszka v. Axos Bank*,
2024 WL 4194338 (S.D. Cal. Sept. 13, 2024) .......... 9, 11

*Rickes v. Thermo Fisher Scientific, Inc.*,
2025 WL 1940191 (S.D. Cal. July 15, 2025) .......... 4, 5, 6

*Rickes v. Thermo Fisher Scientific, Inc.*,
2026 WL 2255243 (9th Cir. Aug. 5, 2026) .......... *passim*

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 7, 10, 11

*Sandquist v. Lebo Automotive, Inc.*,
1 Cal. 5th 233 (2016) .......... 13

*SEIU Local 121RN v. Los Robles Regional Med. Ctr.*,
976 F.3d 849 (9th Cir. 2020) .......... 13

*Sifuentes v. Dropbox, Inc.*,
2022 WL 2673080 (N.D. Cal. June 29, 2022) .......... 5

*Stoker v. Blue Origin, LLC*,
120 Cal. App. 5th 91 (2d Dist. 2026) .......... 2, 13, 14

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ........ 10
*Swanson v. U.S. Forest Serv.*,
87 F.3d 339 (9th Cir. 1996) ........ 4
*Tempest v. Safeway, Inc.*,
2025 WL 1953465 (N.D. Cal. July 16, 2025) ........ *passim*
*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) ........ 12
*Vasquez v. SaniSure, Inc.*,
101 Cal. App. 5th 139 (2d Dist. 2024) ........ 3
*Webber v. Uber Techs., Inc.*,
2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ........ 8
*West v. Uber Techs.*,
2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ........ 8

**Rules**

C.D. Cal. L.R. 11-6 ........ 3, 4

Plaintiff Helen Wittman ("Plaintiff") respectfully submits this Opposition to Defendant CVS Pharmacy, Inc.'s ("Defendant") Motion to Compel Arbitration (ECF Nos. 23, 23-1) (the "Motion" or "MTC").

**INTRODUCTION**

Although Defendant's Motion meanders for twenty-two pages, it can be distilled down to two sentences. First, Defendant provides evidence that it *sent* an e-mail with an arbitration clause to Plaintiff more than seven years after Plaintiff became an ExtraCare member, but no evidence that Plaintiff *received* or opened that e-mail. And two, although Defendant contends it has met its burden to show notice, that argument is undermined by Plaintiff's own evidence and Ninth Circuit precedent that Defendant fails to address. *See*, *e.g.*, *Rickes v. Thermo Fisher Scientific, Inc.*, 2026 WL 2255243 (9th Cir. Aug. 5, 2026) ("*Rickes II*"); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023). Thus, Defendant's Motion fails.

Defendant does not contend that Plaintiff agreed to arbitration, or that its Terms and Conditions contained an arbitration clause when Plaintiff enrolled to become a CVS ExtraCare member in August 2017. Rather, Defendant's sole argument in favor of arbitration is, that more seven years later, "[o]n March 19, 2025, CVS sent an email to Wittman and all CVS ExtraCare members to notify them of important updates to the Terms … including, specifically, the Dispute Resolution terms." MTC at 4:8-17. However, Defendant adduces no evidence—and does not even contend—that Plaintiff received or even opened the e-mail in question. As the Ninth Circuit has made clear repeatedly—and even as recently as two months ago—that is dispositive on its own. *Rickes II*, 2026 WL 2255243, at *1 (denying motion to compel arbitration where "Thermo Fisher established that it sent Rickes four emails regarding the MDRA to his work email address. However, its electronic records do not show that Rickes viewed the emails, clicked the hyperlink to the agreement, or otherwise interacted with the arbitration materials"); *Jackson*, 65 F.4th at 1099 (same where Amazon "notified drivers via email of the 2019 TOS" but "did not … make any showing that Jackson

received such notice”). Defendant’s “evidence that the emails were successfully delivered does not meet its burden to show contract formation or even create a genuine dispute as to contract formation.” *Tempest v. Safeway, Inc.*, 2025 WL 1953465, at *5 (N.D. Cal. July 16, 2025) (cleaned up).

Moreover, Plaintiff avers she searched her inbox for the at-issue e-mail at the direction of counsel and could not find it. Wittman Decl. ¶ 4. In addition, Plaintiff does not recall seeing or receiving such an email from CVS, nor does she recall opening such an email, reading such an email, or clicking on any link in said email. *Id*. ¶ 5. That too is dispositive. *Rickes II*, 2026 WL 2255243, at *1 (“Rickes, for his part, submitted a declaration stating that he received a high volume of work emails, did not recall receiving any communication regarding the MDRA, and had never seen the agreement before this litigation.”); *Tempest*, 2025 WL 1953465, at *5 (“The Court’s conclusion that receipt of an email offer is required to form a contract is consistent with Ninth Circuit precedent.”). Plaintiff therefore could not and did not assent to arbitration.

And that is all this Motion turns on. There is no evidence Plaintiff ever received or saw the e-mail in question, and, as myriad cases hold, no amount of subsequent or other actions by Plaintiff can overcome that deficiency in Defendant’s evidence. But even if more were necessary, the arbitration clause is also unconscionable. The arbitration clause in the ExtraCare terms effectively requires Plaintiff to arbitrate any claim she may have from now until the end of time against anyone with any relationship to Defendant, from a random employee to any future affiliate. Asermely Decl. Ex. C at 9-10. Such overly broad arbitration clauses are unconscionable and should be struck down as “tainted with illegality.” *Phan v. Knight Sacramento SU Inc.*, 121 Cal. App. 5th 641, 654, 658 (3d Dist. 2026); *Stoker v. Blue Origin, LLC*, 120 Cal. App. 5th 91, 108 (2d Dist. 2026).

For the following reasons, Defendant’s Motion should be denied.

## LEGAL STANDARD

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate a dispute exists." *Vasquez v. SaniSure, Inc.*, 101 Cal. App. 5th 139, 143 (2d Dist. 2024) (cleaned up).

"A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). And "the FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (cleaned up). Thus, "[t]he policy is to make arbitration agreements as enforceable as other contracts, but not more so." *Id.* (cleaned up).

## ARGUMENT

### I. DEFENDANT'S MOTION FAILS TO COMPLY WITH THIS DISTRICT'S WORD-COUNT LIMITATION

Defendant's Motion fails to comply with this District's Local Rules. Specifically, Civil L.R. 11-6.1 states that "no memorandum of points and authorities … may exceed 7,000 words." Word-count limits "are not mere formalities. They are important." *LaComba v. Eagle Home Loans and Investment, LLC*, 2023 WL 6201597, at *1 (E.D. Cal. Sept. 22, 2023) (striking overlength briefs). Such limits "promote judicial economy and encourage litigants to hone their arguments and to eliminate

excessive verbiage." *Id.* (cleaned up). Here, Defendant's Motion contains 7,703 words and lacks the word-count certification required by L.R. 11-6.2. *See generally* MTC; *see also* Klein Decl. ¶ 2.[1] Accordingly, Plaintiff respectfully requests that the Court either (i) strike all words in Defendant's Motion beyond 7,000 as overlength, (ii) require Defendant to file a version of its Motion that is *not* overlength, or (iii) limit Defendant's Reply Brief to 6,297 words, rather than 7,000. *See, e.g.*, *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (affirming district court's decision to strike an overlength brief).

## II. UNDER NINTH CIRCUIT PRECEDENT, DEFENDANT HAS NOT MET ITS BURDEN TO SHOW ITS E-MAIL PUT PLAINTIFF ON NOTICE OF THE ARBITRATION AGREEMENT

### A. Defendant Provides No Evidence Plaintiff Actually Received Or Saw The E-Mail, And Plaintiff Attests To The Opposite

Defendant's only argument in favor of arbitration is that "[a]s a CVS ExtraCare member, Wittman was sent the March 19, 2025 email at the address she provided for communications, notifying her that the ExtraCare Terms & Conditions have been updated—including, specifically, the Dispute Resolution terms." MTC at 18:4-7 (cleaned up). The Ninth Circuit's decision in *Rickes II*, among others, belies Defendant's argument.

In *Rickes*, as here, the defendant sought to compel arbitration based on e-mails it sent to the plaintiff—its employee. *Rickes v. Thermo Fisher Scientific, Inc.*, 2025 WL 1940191, at *2 (S.D. Cal. July 15, 2025), *aff'd*, 2026 WL 2255243 (9th Cir. Aug. 5, 2026) ("*Rickes I*") ("Thermo Fisher sent Rickes an initial email informing him of the MDRA on June 14, 2019."). Indeed, unlike here, the defendant in *Rickes* sent the e-mail with the dispute resolution provision to the plaintiff *four times*, and provided evidence that said e-mails were actually in the plaintiff's inbox. *Rickes I*, 2025 WL

[1] Defendant also misrepresents that it informed Plaintiff of its position that she was subject to arbitration "before … the Complaint was filed." Markowitz Decl. (ECF No. 23-2) ¶ 3. On the contrary, Defendant did not respond to Plaintiff's CLRA pre-suit letter, and only reached out after filing. Klein Decl., ¶ 3.

1940191, at *2 ("Rickes received three reminder emails on July 1, July 12, and July 22, 2019. Thermo Fisher searched Rickes' work email and located copies of all four emails in his inbox.") (cleaned up).

That was not enough for the Ninth Circuit:

> Thermo Fisher established that it sent Rickes four emails regarding the MDRA to his work email address. *However, its electronic records do not show that Rickes viewed the emails, clicked the hyperlink to the agreement, or otherwise interacted with the arbitration materials*.
>
> Rickes, for his part, submitted a declaration stating that he received a high volume of work emails, did not recall receiving any communication regarding the MDRA, and had never seen the agreement before this litigation.

*Rickes II*, 2026 WL 2255243, at *1 (emphasis added). Nor was it enough that the plaintiff "continu[ed] his employment after failing to opt out within forty-five days. Under California law, that is not enough to establish mutual assent." *Id*. Thus, despite the employer-employee relationship and defendant's evidence the plaintiff was sent multiple e-mails with the dispute resolution provision, the Ninth Circuit declined to compel arbitration because the defendant provided no evidence that the plaintiff "viewed the emails, clicked the hyperlink to the agreement, or otherwise interacted with the arbitration materials," or even "recall[ed] receiving any communication regarding the MDRA." *Id*.

Defendant has put forth even *less evidence* here than was presented in *Rickes*. *Rickes* therefore compels the same result. Defendant avers it sent updated ExtraCare Terms to Plaintiff "at the email she used to sign up for ExtraCare." Asermely Decl. ¶ 10. But unlike in *Rickes*, Defendant offers no evidence Plaintiff actually *received* the e-mail. *See*, *e.g.*, *Jackson*, 65 F.4th at 1099 (denying motion to compel arbitration based on updated terms where the defendant failed to "make any showing that [plaintiff] received such notice"); *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *4

(N.D. Cal. June 29, 2022) (same where "there is nothing in the record to suggest that Plaintiff saw or read the email, such as a read receipt reflecting that Plaintiff opened the email."); *Tempest v. Safeway, Inc.*, 2025 WL 1953465, at *5 (N.D. Cal. July 16, 2025) ("The Court's conclusion that receipt of an email offer is required to form a contract is consistent with Ninth Circuit precedent."). Defendant's "evidence that the emails were successfully delivered does not meet its burden to show contract formation or even create a genuine dispute as to contract formation." *Tempest*, 2025 WL 1953465, at *5 (cleaned up); *see also Rickes I*, 2025 WL 1940191, at *3 (denying motion to compel despite defendant's evidence that "[n]one of the emails were returned as undeliverable").

In addition, Plaintiff "signed up to become [ExtraCare] Rewards member[] in person at" *Target* (not CVS), "whereas notice of the arbitration offer was provided via email." *Tempest*, 2025 WL 1953465, at *6; *see also* Asermely Decl. ¶ 6. "The discrepancy between in-person sign-up and email notice further undermines" Defendant's argument that "email created sufficient notice in this case," and even more so than in *Tempest* where the plaintiff signed up in the defendant's store versus a third party's store here. *Tempest*, 2025 WL 1953465, at *6.[2]

For her part, Plaintiff avers she "do[es] not recall seeing or receiving such an email from CVS, nor do I recall opening such an email, reading such an email, or clicking on any link in said email." Wittman Decl. ¶ 5; *see also Rickes II*, 2026 WL 2255243, at *1 (defendant's "electronic records do not show that Rickes viewed the emails, clicked the hyperlink to the agreement, or otherwise interacted with the arbitration materials"). Plaintiff further avers:

> [a]t the direction of counsel, I searched the email associated with my CVS ExtraCare account. I searched my

[2] Notably, three of the plaintiffs in *Tempest* found the at-issue e-mail in their inboxes after searching for it "[a]t the direction of their counsel." *Tempest*, 2025 WL 1953465, at *2. The court still denied the motion to compel arbitration for those plaintiffs.

> main inbox, spam folder, and trash, but *I was not able to find any email from CVS* from March 2025 regarding the terms and conditions…

Wittman Decl. ¶ 4 (emphasis added); *see also id.* ¶¶ 6-7. Finally, Plaintiff avers she was never aware of "any arbitration agreement from CVS when I signed up to become a CVS ExtraCare member." *Id.* ¶ 2. Defendant's failure to present evidence that Plaintiff was on notice of or agreed to the updated terms, coupled with Plaintiff's sworn statements to the contrary, is dispositive of Defendant's Motion.

**B. Defendant's Arguments And Authorities Are Unpersuasive**

Defendant relies exclusively on authorities that almost all predate *Rickes II* (MTC at 16:20-18:2), and those authorities should be disregarded to the extent they are inconsistent with the Ninth Circuit's most recent decision.[3] But each authority is also distinguishable because "[e]ach involved objective evidence of assent that is absent here, whether through a signed acknowledgment, undisputed receipt and review of the agreement, or prior acceptance of arbitration." *Rickes II*, 2026 WL 2255243, at *2. For instance, in *Brewer v. Jersey Mike's, Inc.*, 2026 WL 2367683, at *1 (C.D. Cal. Aug. 6, 2026) (Sykes, J.), unlike here, the defendant adduced evidence that the "[p]laintiff opened the email" containing the updated terms. Likewise, in *Sadlock v. Walt Disney Co.*, 2023 WL 4869245 (N.D. Cal. July 31, 2023), and again unlike here, the defendant's records not only confirmed delivery of the e-mail with the terms, but also that the plaintiff actually opened the e-mail. *See Sadlock v. Walt Disney Co.*, Case No. 3:22-cv-9155, ECF No. 18-3 ¶ 9 (N.D. Cal. Apr. 6, 2023); *id.* Ex. B; *Sadlock*, 2023 WL 4869245, at *13 ("Mr. Sadlock has not contended he did not receive or see the emails in question.").

All of Defendant's other authorities concerning e-mail notice are of the same inapposite ilk: "in none of those district court cases did the plaintiff present evidence

---

[3] The lone exception, *Brewer*, was issued the day after *Rickes II*.

they had no knowledge of the email containing the arbitration offer." *Tempest*, 2025 WL 1953465, at *5 (N.D. Cal. July 16, 2025) (distinguishing most of Defendant's authorities); *see also Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 931-33 (N.D. Cal. 2024) ("Coursera produced a declaration … that an email … was delivered to Plaintiff's email … Plaintiff does not contend that he did not receive the email, either."); *Webber v. Uber Techs., Inc.*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018) (plaintiffs "received an email … notifying [them] that Uber's Terms had been updated"); *In re Uber Techs., Inc.*, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) ("Plaintiff does not refute that she received such an email…"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("Plaintiff also received an email … informing him of updates to the Arbitration Agreement … Plaintiff does not address this issue nor raise any argument in his opposition."); *Jackson*, 65 F.4th at 1100 (distinguishing *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016)—upon which Defendant relies—because the defendant there also "provided notifications on each individual's Facebook News Feed that the terms were being updated"); *Kamath v. Coinbase, Inc.*, 2024 WL 940163, at *5 (N.D. Cal. Mar. 5, 2024) ("Plaintiff here received even more notice than a single email.").

Defendant's authorities concerning website notice (MTC at 16:4-19, 16 n.3) are equally irrelevant because Defendant does not contend Plaintiff agreed to the ExtraCare terms on its website, and Plaintiff does not recall receiving the e-mail in the first place. *Tempest*, 2025 WL 1953465, at *5 ("Since the record is undisputed Plaintiffs never saw the May 2024 email Safeway relies on for notice purposes … [t]he clickwrap and browsewrap cases are wholly inapposite.").

Defendant also contends the terms are binding because "Wittman had a multi-year, ongoing relationship with CVS through its ExtraCare program." MTC at 19:7. But the plaintiffs in *Rickes* and *Jackson* also had "ongoing relationships"—and employment or employment-like relationships at that—yet the Ninth Circuit denied arbitration in both cases. *Rickes II*, 2026 WL 2255243, at *1 ("Thermo Fisher

nevertheless contends that Rickes accepted the MDRA by merely continuing his employment after failing to opt out within forty-five days. Under California law, that is not enough to establish mutual assent."). Indeed, the optional nature of the arbitration agreement (*i.e.*, the provision has an opt-out clause) weighs against assent. *See Pliszka v. Axos Bank*, 2024 WL 4194338, at *7 (S.D. Cal. Sept. 13, 2024) ("This is also not a case where Plaintiff's silence may be treated as consent because he retained the benefits of his money market account. Here, the change-in-terms e-mail clearly indicated opting out of the arbitration provision would not affect an accountholder's other rights or responsibilities under the agreement.") (cleaned up).

Nor is it sufficient that Plaintiff continued to use her ExtraCare account after the updated terms were sent (but not received). "California courts … have made clear that silence alone does not constitute assent." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017); *see also*, *e.g.*, *Jackson*, 65 F.4th at 1100 ("[I]f Flex drivers did not receive notice of the revised TOS, the fact that they continued working and using the Amazon Flex app could not demonstrate assent."); *Alaoui v. Segway Powersports, Inc.*, 2026 WL 1658502, at *5 (C.D. Cal. June 5, 2026) (Sykes, J.) (rejecting argument that "Plaintiff manifested his assent to the Arbitration Agreement through his continued use of the G30P KickScooter because a reasonable person in Plaintiff's position would have understood that their continued use of the KickScooter, and reliance on the Limited Warranty, constituted accession to the Arbitration Agreement"). Absent a proffer of evidence that Plaintiff was on notice of and assented to the terms to which Defendant seeks to bind her, even "[r]epeated use" of the ExtraCare service is insufficient. *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-20 (9th Cir. 2020); *see also Tempest*, 2025 WL 1953465, at *6 ("Because Safeway has not established the email provided notice of the arbitration offer, it follows that no reasonable trier of fact could find Plaintiffs' subsequent purchases at Safeway manifested assent to Safeway's offer."); *Jones v. Penney Opco, LLC*, 2025 WL 2180560, at *3 (E.D. Cal. Aug. 1, 2025) (rejecting argument that

plaintiff was "on inquiry notice of the Site Terms of Use" because she was "a member of the Rewards Program who has shopped with defendant for over 20 years").

Defendant also contends "there was undisputedly an agreement of some kind in place before March 19, 2025, and there is no reason CVS should not be permitted to modify that agreement, and email is the obvious means to do so." MTC at 19:10-13 (cleaned up). What that original agreement included and whether Defendant provided sufficient notice of it are not things Defendant adduces evidence of. *Tempest*, 2025 WL 1953465, at *6 ("Safeway does not offer any evidence of the terms of use, if any, Plaintiffs agreed to when they signed up for Safeway Rewards; so, there is no evidence Plaintiff had notice Safeway could change its terms via email.").

Regardless, even if Defendant may modify its terms by e-mail, it must still provide sufficient notice of those changes to effectuate them, which it did not do here. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("Stover had no obligation to investigate whether Experian issued new terms without providing notice to her that it had done so."). "It is not sufficient to provide a general notice of the possibility of future modifications," and an opposite rule would "stand[] the law's notice requirement on its head." *Jackson*, 65 F.4th at 1100 (cleaned up).

Finally, Defendant makes a plea that "Wittman should not be permitted to reap the benefits of her membership without also having to comply with her end of the agreement." MTC at 19:26-27. Defendant does not suggest it received no benefit by virtue of Plaintiff signing up for its rewards program, and whether and what terms governed the ExtraCare program generally does not constitute acceptance to arbitration necessarily. *See Sadlock*, 2023 WL 48692456, at *12 ("There was undisputedly an agreement of some kind between Mr. Sadlock and Disney based on his purchase of the subscription service, even if there was no agreement to the terms contained in the Subscription Agreement (including the arbitration provision).") Again, as noted above, Defendant admits the arbitration clause was optional, so it is unclear how Plaintiff is accepting benefits while shirking some responsibility. *See*

*Pliszka*, 2024 WL 4194338, at *7. In any event, as Defendant's own authority acknowledges:

> [b]y relying solely on the sending of an email and continued service without requiring the recipient to take some demonstrable affirmative step or proof of receipt and review, *the proponent of the putative notice risks a finding of no constructive notice and assent*. Emails present a different scenario that the situation where upon initial acceptance, the subscriber takes an affirmative step (*e.g.* clicking an "agree and subscribe" button) acknowledging receipt of notice.

*Sadlock*, 2023 WL 4869245, at *13 (emphasis added). Defendant's Motion runs headlong into those risks here. Defendant sent an e-mail but without any proof that Plaintiff received it or opened it. Without such evidence, Defendant's Motion fails.

### C. Defendant Provides No Other Evidence Of Notice Of Or Assent To The ExtraCare Terms

Other than the sole e-mail Defendant contends it sent to Plaintiff in March 2025, Defendant provides no other ways through which Plaintiff was ostensibly notified of the arbitration clause. Defendant avers that "Wittman voluntarily enrolled in CVS's ExtraCare program … on a tablet device inside a Target store." MTC at 3:19-20. As an initial matter, the incongruity between Plaintiff enrolling in ExtraCare Rewards in-store but being sent an e-mail for updated terms weighs against notice. *Tempest*, 2025 WL 1953465, at *6 ("The discrepancy between in-person sign-up and email notice further undermines Safeway's argument that an 'out of the blue' email created sufficient notice in this case."). Regardless, Defendant submits no evidence of what the tablet looked like at the time Plaintiff signed up for the program or what terms Plaintiff may or may not have "agreed to when [she] signed up for [ExtraCare] Rewards." *Id*. That is dispositive as well. *Jackson*, 65 F.4th at 1099 (finding user did not consent to updated terms where "Amazon did not provide the court with a copy or description of any such notice"); *Ningo Aux Electric Co. v. Best Houseware Inc.*, 2026

WL 2113979, at *3 (C.D. Cal. June 8, 2026) (Sykes, J.) (denying motion to compel arbitration where "AUX HK has submitted no declaration from any percipient witness attesting to the manner in which the August 30, 2023, PI was transmitted to BH").

Similarly, Defendant's argument that Plaintiff "provided an email address for purposes of contacting her" and "opted to enroll in SMS text messages" (MTC at 3:20-21) carry no weight given Defendant failed to present evidence of what terms Plaintiff was shown (if any at all), the design and content of any such notice, and whether Plaintiff manifested unambiguous assent to the same.

Defendant is not permitted to submit new evidence on reply. *Hooks v. Target Corp.*, 2023 WL 4680337, at *1 (C.D. Cal. May 11, 2023) (Sykes, J.) ("Raising new facts or arguments on reply is improper."); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) ("New evidence submitted as part of a reply is improper because it does not allow the defendant an adequate opportunity to respond.") (cleaned up). So, Defendant is stuck arguing only that it sent notice of the arbitration agreement through e-mail one time on March 19, 2025. And its evidence in that respect is deficient as set forth above. *See* Argument §§ II.A-B, *supra*.

## III. DEFENDANT'S "INFINITE ARBITRATION" CLAUSE IS SUBSTANTIVELY UNCONSCIONABLE

Even if Defendant had adduced evidence Plaintiff received and opened the e-mail with the ExtraCare Terms (it did not), Defendant's Motion would still fail because its arbitration clause is unconscionable.

As an initial matter, Defendant is wrong that the "contracting parties agreed to arbitrate arbitrability." MTC at 20:25 (cleaned up). The ExtraCare Terms provide that "[t]he arbitrator shall decide all issues *except for* … those issues relating to the scope, validity, and enforceability of the Arbitration Agreement or any of the provisions of this Section." Asermely Decl. Ex. C at 10 (emphasis added). Thus, the ExtraCare Terms clearly state that issues like unconscionability are for the Court to decide. Defendant cites to the Terms' incorporation of the NAM rules (MTC at 20:26),

but that incorporation cannot trump the contract's plain language. This is coupled by the fact that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *SEIU Local 121RN v. Los Robles Regional Med. Ctr.*, 976 F.3d 849, 853 (9th Cir. 2020) (cleaned up). In fact, the presumption is that silence or ambiguity must be construed against delegation. *See id.*; *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016) (where "the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation"). So, unconscionability is for the Court to decide.

On this point, *Phan* is instructive. There, the arbitration clause required arbitration of "any and all claims which arise out of … any other interaction/relationship we had, have or may have in the future" against not only the defendant, but also its "owners, directors, officers, managers, employees, agents, partners, attorneys, sister-companies, subsidiaries, parent companies, joint-venturers, affiliated persons/entities, independent contractors, and parties affiliated with its employee benefit and health plans." *Phan*, 121 Cal. App. 5th at 654, 656 (cleaned up). The Court of Appeal found the clause to be "tainted with illegality" and voided the entire arbitration clause as unconscionable. *Id.* at 658. In particular, the Court of Appeal found the clause was unconscionable because it had "such an expansive scope of arbitrable claims" that "encompasse[d] all of Phan's claims against Knight and its related third parties" and the plaintiff was "bound by these terms indefinitely as the Agreement." *Id.* at 654; *see also Stoker*, 120 Cal. App. 5th at 108 (finding arbitration clause unconscionable where it "applies to *any claim* that might arise *at any time* between Stoker and Blue Origin *or* its parent, subsidiaries, affiliates, successors or assigns, *or* employees of any of these entities") (emphasis in original).

So too here. The arbitration clause encompasses any claim Plaintiff may bring against "CVS" or "CVS brings against [her]" arising out of "any aspect of the

relationship between" Plaintiff and CVS that accrued prior to the Agreement or even "after the termination of this Agreement." Asermely Decl. Ex. C at 10. "CVS" is defined as "CVS Pharmacy, Inc., its subsidiaries or affiliates, as well as any of their respective present or future affiliates or subsidiaries, and any persons or entities (including agents, representatives, or employees) related to CVS or its present or future affiliates or subsidiaries." *Id.* at 9. So, to say the arbitration clause was drafted "to secure the broadest possible arbitration coverage" (MTC at 20:20-21) is an understatement. The clause, on its face, compels Plaintiff to arbitrate virtually *any claim* she may have against *anyone* related to CVS (*e.g.*, a random employee)—or even someone that is *not yet related* to CVS like a future affiliate—*forever*. That is the exact type of "infinite arbitration clause" the Court of Appeal struck down in *Phan* and *Stoker*. On top of that, the terms also have a waiver of a jury trial for any non-arbitrable claims (Asermely Decl. Ex. C at 16) that is "contrary to California public policy and, thus, unenforceable." *Stoker*, 120 Cal. App. 5th at 110. And, because the terms are permeated with such overreach, the arbitration clause itself is "tainted with illegality" and the entire clause should be struck rather than severing the offending scope. *Phan*, 121 Cal. 5th at 658.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion.

Dated: October 9, 2026

Respectfully submitted,

By: */s/ Lilach H. Klein*
Lilach H. Klein

**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
Zachary M. Crosner (SBN 272295)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Tel: (866) 276-7637
Fax: (310) 510-6429
E-mail: lilach@crosnerlegal.com
zach@crosnerlegal.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Max S. Roberts (SBN 363482)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*

**LOCAL RULE 11-6.2 CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies this brief contains 4,719 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 9, 2026

By: */s/ Lilach H. Klein*
Lilach H. Klein