René P. Tatro (SBN 078383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
1800 N. Vine Street, Suite 234
Los Angeles, CA 90028
Telephone: (213) 225-7171
Facsimile: (213) 225-7151
E-mail: rtatro@ttsmlaw.com
jmarkowitz@ttsmlaw.com

Attorneys for Defendant
CVS Pharmacy, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HELEN WITTMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.;<br><br>Defendant. | Case No. 5:26-cv-02827-SSS (DTBx)<br><br>**CVS PHARMACY, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Honorable Sunshine S. Sykes<br><br>Date: November 20, 2026<br>Time: 2:00 p.m.<br>Dept: Riverside Ctrm. 2, 2nd Floor (Via Zoom) |

## INTRODUCTION

Wittman's[1] claimed lack of recollection about reading CVS's March 19, 2025 email updating the ExtraCare Terms and arbitration agreement does not excuse her from her obligation to arbitrate this action. Wittman does not dispute that CVS sent the email to her correct personal email address, the address she gave CVS to use when she voluntarily joined the ExtraCare loyalty program (a program she continues to use and benefit from, pursuant to which she purchased the product at issue). The mailbox rule — which the Ninth Circuit did not address in its very brief Memorandum (unpublished, not precedential) decision in *Rickes v. Thermo Fisher Scientific, Inc.*, 2026 WL 2255243 (9th Cir. Aug. 5, 2026), and which thus remains controlling law — creates a presumption of receipt, and therefore notice of the updated arbitration agreement that was appropriately referenced in the March 19, 2025 email. Unlike the plaintiff in *Rickes*, Wittman offers no explanation why she would not have seen or read the email when CVS sent it to the address she directed CVS to use. Her assertion that she has no specific recollection today, more than 1.5 years later, of doing so (an argument she never mentioned at all during the parties' meet and confer discussions) is insufficient to defeat the presumption, and under well-established California law, Wittman's continued use of the ExtraCare program thereafter constitutes her assent to the arbitration agreement.

Moreover, to the extent the arbitration agreement is overbroad (an argument Wittman also failed to raise in the parties' meet and confer), the purportedly overbroad provisions are easily excised. Those provisions are irrelevant to Wittman's complaint.[2]

## ARGUMENT

### A. Under applicable law, Wittman's lack of recollection is not sufficient to dispute notice or assent, and neither *Rickes* nor *Jackson* is to the contrary.

Although Wittman denigrates CVS's necessary and accurate discussion of the

[1] CVS uses the same abbreviations as used in the Motion. The opposition is cited as "Opp." The Supplemental Declaration of Juliet A. Markowitz filed herewith is cited as "Supp. Markowitz Decl."

[2] CVS apologizes to the Court for inadvertently neglecting to include the L.R. 11-6.2 Certification of Compliance and filing a brief with more than 7,000 words. CVS can re-file the motion without the approximately 700 extra words if the Court would like it to do so. (*See* Supp. Markowitz Decl. ¶ 7).

governing law and arbitration agreement provisions as "meander[ing] for twenty-two pages" (Opp. at 1:5), she does not dispute that the arbitration agreement is governed by the FAA. Nor does she take issue with any of the legal principles CVS cites, including that, as also recognized by the case law cited in her opposition, "[w]hether an arbitration agreement was formed is determined by applying ordinary state-law principles of contract formation. [Citation.]" *Rickes v. Thermo Fisher Scientific, Inc.*, 2026 WL 2255243, at *1 (9th Cir. Aug. 5, 2026) (citation omitted). Wittman likewise does not dispute that the March 19, 2025 email from CVS updating the arbitration, jury trial waiver, and class action waiver provisions of the ExtraCare Terms was correctly addressed to her personal email address, the address she directed CVS to use for important communications and updates. And she does not (and cannot) dispute that CVS sent her the email, as attested to by Amanda L. Asermely, and that it "was not returned as undeliverable." (Dkt. 23-3, Asermely Decl. ¶¶ 9-16 & Dkt. 23-5, Exh. B).

Instead, Wittman claims only that she is not able now to find the March 19, 2025 email in her Hotmail.com inbox, spam folder, or trash, and does not today, more than 1.5 years later, recall seeing or receiving this one particular email, opening or reading it, or clicking on the link therein. (Dkt. 27-2, Wittman Decl. ¶¶ 4-5).[3]

Based on this purported lack of recollection — of which her counsel made no reference during the parties' meet and confer about this motion, even though CVS's counsel sent her counsel a copy of the email setting forth the basis for the motion (Supp. Markowitz Decl. ¶¶ 3–4) — Wittman contends, erroneously, that this case falls squarely under the Ninth Circuit's holdings in *Rickes v. Thermo Fisher Scientific, Inc.,* 2026 WL 2255243 (9th Cir. Aug. 5, 2026), and *Jackson v. Amazon.com, Inc.,* 65 F.4th 1093 (9th Cir. 2023), such that CVS has not and cannot satisfy its burden of establishing the notice

[3] Wittman neglects to disclose how far back the emails in her inbox, spam folder (emptied after 30 days in Hotmail.com), or trash folder (also emptied after 30 days in Hotmail.com) go, nor does she provide any details about the folder in which email correspondence from CVS regarding the ExtraCare Program is typically received. (*See* Supp. Markowitz Decl. ¶ 6 & Exh. 1 thereto). Wittman does not deny that she has seen or opened other emails from CVS, whether regarding the ExtraCare Program or otherwise.

and consent elements of any arbitration agreement. Wittman is wrong on both counts.

Neither *Rickes* nor *Jackson* involved a consumer plaintiff who opposed a motion to compel arbitration based purely on a lack of recollection. In *Jackson,* an employment (rather than consumer) case, the court denied the defendant's motion to compel arbitration because, unlike CVS, which submitted a copy of the email it sent to Wittman and all ExtraCare members, the defendant failed to provide any such evidence, rendering it impossible for the court to find notice or assent. As the *Jackson* court stated:

> In this case … there is no evidence that the email allegedly sent to drivers adequately notified drivers of the update. ***The district court did not have the email***, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice. ***Nor did the court have other evidence that might allow it to assess notice, such as a description of the email***. Amazon provided only a declaration with a vague statement that a notice of updated terms was sent via email. Unlike in *Webber*, there is no evidence that the alleged notice Amazon sent to drivers in 2019 informed them that continuing to complete deliveries or use the app would bind drivers to the new terms. ¶ …. It was Amazon's burden to show assent, not Jackson's to show lack thereof. Given Amazon's limited proffer, the court could not determine that there was assent. Amazon relies on a provision in the TOS from three years earlier to establish that drivers knew they would be bound by any future modifications if they continued to perform services or use the app. Yet, if Flex drivers did not receive notice of the revised TOS, the fact that they continued working and using the Amazon Flex app could not demonstrate assent.

*Jackson,* 65 F.4th at 1100 (emphasis added).

In *Rickes*, also an employment case, the plaintiff employee — unlike Wittman — submitted a declaration explaining "that he 'received a high volume of daily emails'" in his work account, and described "the various factors [that] prevented him from reviewing each email he received" in that work account. *Rickes v. Thermo Fisher Scientific*, Inc., 2025 WL 1940191, at *2 (S.D. Cal. Jul. 15, 2025).

Here, unlike the *Rickes* plaintiff, Wittman offers no explanation why she would not have seen or read the March 19, 2025 email when it was sent to her by CVS. This failure is significant both because the mailbox rule (which does not appear to have been raised in *Rickes*) creates a presumption of receipt, and because California law allows parties to modify agreements and incorporate arbitration agreements into them.

The Ninth Circuit's brief non-precedential *Rickes* Memorandum decision contains very little substantive analysis and is inconsistent with both California law and its own prior decisions. Under California law, "it is settled that an employer may unilaterally alter the terms of an employment agreement, provided that such alteration does not run afoul of the Labor Code," and an "employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 619–20 (2009) (citations omitted). As the Ninth Circuit explained in *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284–85 (9th Cir. 2017) (cited in *Rickes*), "[a]n offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of this duty." In addition, "[a]n offeree's silence may also be treated as consent to a contract when the party retains the benefit offered." *Id.* at 1285.

Moreover, "parties may incorporate by reference into their contract the terms of some other document." *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 66 (2013) (citation omitted). "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Id.* (citation omitted). "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" *Id.* (citation omitted).

Although the *Rickes* court, in a decision that is little more than a single page, held that the plaintiff employee's assent could not be established merely through his silence and failure to opt out of the arbitration agreement, particularly given his declaration explaining why he was unable to read and review all of the many emails in his work account (*Rickes,* 2026 WL 2255243, at *1), it does not appear from the decision that the defendant argued it was entitled to rely on the mailbox rule to establish

the plaintiff's notice and assent, as the court did not address the issue. For this and other reasons, the Ninth Circuit's decision in *Rickes* is not a "precedential holding[] binding future decisions" on this issue. *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285 (9th Cir. 1985), citing, *inter alia, United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37–38, 73 S.Ct. 67, 69 (1952) (prior decision is not binding precedent on point neither raised by counsel nor discussed in the opinion of the court in that case).

As the Ninth Circuit very recently recognized, "[t]he federal mailbox rule establishes a presumption of receipt of a mailing that cannot be rebutted with a mere statement of denial." *LaCour v. Marshalls of CA, LLC*, 2025 WL 3754345, at *1 (9th Cir. Dec. 29, 2025). In *Zuckerman v. Charter Commc'ns, LLC*, 2024 WL 4871739, at *6 (S.D. Cal. Nov. 22, 2024), the defendant employer argued it was entitled to rely on the mailbox rule to establish notice vis-à-vis an email, and the court recognized that "under the mailbox rule, 'the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.' [Citations.]" In applying this presumption, the court held that the plaintiff's "lack of recollection that he received the email is insufficient to rebut this presumption," and concluded that the employer's email, which contained a link to a website with a link to the arbitration agreement, "adequately incorporated the Mutual Arbitration Agreement, and that Plaintiff impliedly consented to the Mutual Arbitration Agreement by failing to opt out of the Solution Channel Program within the designated time." *Id. See also Ashirwad v. Charter Commc'ns, LLC*, 2023 WL 3564938, at *6 (S.D. Cal. Mar. 20, 2023) ("Because Lopez did not opt out within the designated time, the Court finds—as other courts reviewing this very email announcement and program have found—that he impliedly consented to the Solution Channel and MAA.") (citing cases); *Prizler v. Charter Commc'ns, LLC*, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019) ("Under the mailbox rule, the Court finds that Prizler received the email at that time as he has not provided any evidence to the contrary. The Court also finds that Prizler impliedly consented to the [Arbitration] Agreement as he failed to take the steps to opt out despite

Charter providing the instructions on how to do so in an accessible place."); *Moran v. Charter Commc'ns, Inc.*, 2020 WL 5833640, at **4, 5 (C.D. Cal. June 11, 2020) (holding that the "mailbox rule presumption … applies to the emails" for purposes of establishing implied agreement to arbitrate, and concluding that the "[f]ailure to opt out after adequate notice of the arbitration provision, coupled with Plaintiffs' continued acceptance of Defendants' services, bound Plaintiffs to the arbitration provision.")

Numerous courts in other jurisdictions are in accord in affirming the mailbox rule to enforce arbitration agreements. *See, e.g., Jordan v. Equifax Info. Servs.*, 2021 WL 4988315, at *7 (N.D. Ga. July 21, 2021) (finding that the plaintiff's assertions that he never received the notice with the arbitration agreement were insufficient to rebut the presumption that he received the agreement), *report and recommendation adopted*, 2021 WL 4988316 (N.D. Ga. Sept. 30, 2021); *Casias v. AT&T Servs., Inc.*, 2024 WL 6981164, at *4 (N.D. Ga. June 7, 2024), *report and recommendation adopted*, 2024 WL 6981188 (N.D. Ga. June 24, 2024) ("Plaintiff's assertion that she never received the email in question is not enough create a genuine issue of material fact. 'When a defendant has produced evidence showing that it sent an item properly mailed ... there arises a rebuttable presumption that it was received by the addressee. This presumption cannot be overcome merely by stating in an affidavit that the plaintiff never received the agreement.' [Citation.] Courts have applied that rebuttable presumption to notices sent via email. [Citation.]"); *id.* ("Defendant has shown that it sent the email three separate times to Plaintiff, sent it to her assigned email address, and never received any undeliverable messages from Plaintiff's account. Her assertion alone that she did not receive the email does not rebut the presumption that she did."); *id.* at *5 ("After Plaintiff had reasonable notice of the arbitration agreement, she continued to work for Defendant and did not opt out of the agreement. That is enough to show that she assented to the terms of the arbitration agreement."); *Abdullah v. American Exp. Co.*, 2012 WL 6867675, at *5 (M.D. Fla. Dec. 19, 2012) (extending rebuttal presumption to email in case involving an arbitration provision and finding that an "affidavit stating he

did not receive the email" was insufficient to create a genuine issue of fact as to whether an agreement was reached), *report and recommendation adopted*, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013); *Clearfield v. HCL Am. Inc.*,2017 WL 2600116, at *2 (S.D.N.Y. June 15, 2017) (recognizing that the mailbox rule applies to email and granting motion to compel arbitration, concluding that "although Clearfield denies having seen the e-mail at issue (Pl.'s Decl. ¶ 8), the law is clear that her denial is insufficient to rebut the presumption that she received the e-mail"); *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029, 1032, 1034–36 (D. Kan. 2018) (enforcing arbitration agreement despite plaintiff's claim that she did not specifically recall seeing emails informing her of arbitration agreement, where "[n]one of the five emails that were sent to plaintiff generated any type of automated reply indicating that the emails were not successfully delivered"); *Scarpitti v. Charter Commc'ns, Inc.*, 2018 WL 10806905, at **2, 3 (D. Colo. Dec. 7, 2018) (holding that plaintiff's "mere ipse dixit" that he did not recall receiving the email announcing the arbitration agreement "is evidence of nothing" and "[h]aving received notice of the arbitration agreement, plaintiff's 'purported ignorance of the policy, whether willful or otherwise, does not absolve him from being bound by the agreement[.]' [Citation.]") (citation omitted); *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at **3, 4 (N.D. Tex. Sept. 19, 2019) (Plaintiff's claim that he "does not recall receiving or having read the email," was not persuasive and did not rebut the presumption of notice and continuing to work for his employer after receipt of notice constituted acceptance).

When the mailbox rule is applied to establish notice of the arbitration agreement, under California law, continuing conduct, such as Wittman's continued use of ExtraCare benefits after receiving the email updating the arbitration, jury waiver, and class action waiver provisions (making 52 separate purchases in less than 1.5 years), is sufficient to constitute an agreement to be bound by the arbitration agreement. *See, e.g., Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 422 (2000) (arbitration compelled; the substantial evidence of receipt coupled with continuing employment was agreement

to arbitrate). As the California Supreme Court has recognized, an employee "[i]mpliedly consent[s]" to an agreement if they "continue[ ] [their] employment after notification that an agreement to arbitration is a condition of continued employment." *Diaz v. Sohnen Enters.*, 34 Cal. App. 5th 126, 130 (2019). *Accord Darren P. Staples v. Henley Pac. LA LLC,* 2026 WL 2279034, at *5 (C.D. Cal. Aug. 6, 2026).

This same principle should apply in the consumer context where, as here, a consumer signs an initial agreement governing a rewards program and expressly acknowledges that the terms are subject to change, is later sent mail (electronic or otherwise) putting them on notice of a change (including updates to the arbitration agreement and that by continuing to be a member they are agreeing to the new terms), and continues to accept the benefits of the rewards program thereafter.[4]

CVS thus respectfully requests that the Court apply the mailbox rule presumption and enforce the arbitration agreement, particularly given that Wittman does not deny that she received the email sent to the address she directed CVS to use, does not explain why she would not have received it or read it, and the email was not returned as undeliverable. Wittman has failed to rebut the presumption that the email was in fact delivered to her, proving notice of the arbitration agreement, and having received that notice, her continued use and enjoyment of the benefits of the ExtraCare rewards program is sufficient to constitute her consent and agreement to the terms of the arbitration agreement.

**B. To the extent the scope and/or duration of the parties' arbitration agreement is overbroad, the overbroad provisions may properly be severed.**

Wittman's argument that the arbitration agreement is purportedly overbroad is another issue she neglected to raise in the parties' meet and confer discussions, even

[4] As explained in the Asermely Declaration, by voluntarily enrolling in CVS ExtraCare, Wittman agreed to its terms and conditions, which provide that CVS could update the ExtraCare terms and conditions and advise of any changes via the email address the customer provided. (Dkt. 23-3, Asermely Decl. ¶ 4 & Dkt. 23-6, Exh. C, CVS Terms at 1). The body of the March 19, 2025 email to Wittman informed her that "[b]y continuing to use and enjoy the benefits of your ExtraCare membership, you acknowledge that you have read and agreed to these updated terms and conditions." (Dkt. 23-3, Asermely Decl. ¶¶ 12–14 & Dkt. 23-5, Exh. B).

though CVS's counsel provided her counsel with the complete arbitration agreement before those discussions began. (Supp. Markowitz Decl. ¶¶ 2–4). This failure notwithstanding, Wittman's argument is irrelevant in this context because where, as here, a plaintiff's claims are related to the parties' agreement such that the plaintiff is not harmed by the claimed overbreadth, courts are reluctant to find substantive unconscionability. *See, e.g., Starace v. Lexington L. Firm*, 2019 WL 2642555, at *8 (E.D. Cal. June 27, 2019) (declining to find arbitration provisions substantively unconscionable based on overbreadth where it found "the scope cannot be deemed overly harsh, unduly oppressive or, unreasonably one-sided so as to shock the conscience" because, *inter alia*, "there is no doubt here that plaintiff's claims against Lexington are related to the Agreement. Indeed, plaintiff does not dispute this point."). Wittman likewise does not (and cannot) dispute that her claims against CVS here are directly related to her purchase of products from CVS as an ExtraCare member.

Unlike the state court decisions Wittman cites, federal courts routinely sever language that might render the scope of an arbitration clause overbroad. *See, e.g., Floyd v. Team Companies, LLC*, 2025 WL 4233937, at *7 (C.D. Cal. July 7, 2025) ("Because the Court finds the scope and duration provisions substantively unconscionable, the Court concludes that severing the unconscionable portion of the Agreement is appropriate.); *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1126 (C.D. Cal. 2015) ("The Court ORDERS that the language in Section 1(a), 'including claims that do not relate to Employee's employment with the Employer' to be severed, and the first sentence of Section 5, 'This Arbitration Agreement shall survive the termination of Employee's employment...' be severed from the Agreement as well. The remainder of the Agreement is enforceable.").

In addition, although Wittman takes issue with the definition of "CVS," she acknowledges that the agreement provides that it "encompasses *any claim Plaintiff may bring against 'CVS'* or 'CVS brings against [her] …." (Dkt. 27 at 13–14, emphasis added). As such, the provisions are fair because they are mutual and not one-sided. *See*

*Avilez v. Mercedes-Benz USA LLC*, 2025 WL 3769257, at *4 (C.D. Cal. Dec. 23, 2025) ("The agreement is also not lacking in mutuality because it applies to '[a]ny claim or dispute … between you and us or any of' the enumerated third-party beneficiaries, and it permits 'either you, us, or a Third Party Beneficiary' to invoke the provision").

Here, the ExtraCare Terms contain two severability provisions. The parties agreed that "[i]f any part of these Terms is ruled to be unenforceable, such part shall be severed, with the remainder of the Terms remaining in full force and effect." (Dkt. 23-6, Asermely Exh. C at 8-9). The arbitration provision also expressly provides that "if any part or parts of this Arbitration Agreement is/are found by a court of competent jurisdiction to be invalid or unenforceable as to your Dispute, then such specific part or parts shall be of no force and effect and shall be severed, and the remainder of the Arbitration Agreement shall continue in full force and effect." (*Id.* at 16).

Wittman has not made, and cannot make, a showing that it would be inappropriate to sever the language she believes is overbroad. To the contrary, given the discrete nature of Wittman's claims in this case and their direct relationship to her purchase of products from CVS as an ExtraCare member, there is no issue whatsoever with severing the language about which Wittman complains. That language does not affect the arbitrability of Wittman's claims in this action.[5]

Dated: October 30, 2026

TATRO TEKOSKY SADWICK LLP

By: /s/ *René P. Tatro*

René P. Tatro, Esq., for CVS Pharmacy, Inc.

---

[5] Pursuant to Wittman's opposition, the language to be severed is as follows. First, from the definition of "CVS" on page 9, the phrase "and any persons or entities (including agents, representatives, or employees) related to CVS or its present or future affiliates or subsidiaries." Second, from the paragraph beginning with "For purposes of this Section" on page 10, the following phrases: (i) "but is not limited to," (ii) "even if the Dispute arises after the termination of your relationship with CVS," (iii) "arose before you entered into this Agreement," and (iv) "and/or (f) arise after the termination of this Agreement."

The jury trial waiver provision is within the arbitration agreement (Section 11) and therefore applies by its terms to arbitrable claims. (Dkt. 23-6 at 16–17). To the extent there is a putative "waiver of a jury trial for any nonarbitrable claims" (Dkt. 27, Opp. at 14) outside the context of an arbitration, that provision can also be severed, for example, by severing the following from the Opt-Out provision on page 16 "including the class action waiver and jury trial waiver."

## LOCAL RULE 11-6.2 CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for defendant CVS Pharmacy, Inc., certifies this brief contains 3,960 words, which complies with the word limit of L.R. 11-6.1.

TATRO TEKOSKY SADWICK LLP

By: /s/ *René P. Tatro*
René P. Tatro, Esq.
Attorneys for Defendant CVS Pharmacy, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October 2026, I electronically filed

**CVS PHARMACY, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Lilach H. Klein
Zachary M. Crosner
**Crosner Legal, P.C.**
9440 Santa Monica Blvd., Ste 301
Beverly Hills, CA 90210
lilach@crosnerlegal.com
zach@crosnerlegal.com

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
ltfisher@bursor.com

/s/ *Karen L. Roberts*
Karen L. Roberts